IAN PAUL STALLINGS, a Minor by and through his Father and Next Friend, Felix Stallings, *et al.*, Plaintiffs-Appellees, v. LITO FAJARDO *et al.*, Defendants-Appellees (Anchor Organization for Health Maintenance, Appellant).

First District (5th Division)   Nos. 86—0294, 86—0650 cons.

Opinion filed June 19, 1987.

SULLIVAN, P.J., specially concurring.

Pretzel & Stouffer, Chartered, of Chicago (Neil K. Quinn, Joseph B. Lederleitner, Robert Marc Chemers, and Steven G. Pietrick, of counsel), for appellant.

Baker & McKenzie, of Chicago (Francis D. Morrissey, Thomas R. Nelson, and Karen Kies DeGrand, of counsel), for appellees St. James Hospital and Sisters of St. Francis Health Services, Inc.

Lord, Bissell & Brook, of Chicago (Harold L. Jacobson and Hugh C. Griffin, of counsel), for appellees Lito Fajardo and Chicago Heights Anesthesia Associates, S.C.

Corboy & Demetrio, P.C., of Chicago (Philip H. Corboy, Bruce Robert Pfaff, and David A. Novolselsky, of counsel), for other appellees.

JUSTICE LORENZ delivered the opinion of the court:

The instant appeal arises out of a medical malpractice action against several physicians and medical associations. On December 24, 1985, the circuit court entered an order of dismissal and order of distribution in accordance with the terms of the settlement agreement reached by the parties. Subsequent to the entry of the order of dismissal and order of distribution, Anchor Organization for Health Maintenance (Anchor), a nonparty to the action, filed a motion to vacate certain portions of the order of distribution. The circuit court denied Anchor's motion for hearing *instanter* and established a briefing schedule. Anchor appealed before a hearing on the motion to vacate

was held. Plaintiffs and defendants filed motions to dismiss the appeal. This court took these motions with the case.

On appeal Anchor contends: (1) the order of distribution was an express adjudication which was adverse to its legal rights and pecuniary interests as a nonparty and is void or at least invalid and voidable since it was made without jurisdiction; (2) a nonparty whose legal rights and pecuniary interest have been directly, substantially and immediately affected by adverse express adjudications has standing to seek a vacation; and (3) it is entitled to have those portions of the orders vacated, reversed, stricken or expunged. We do not reach these issues because we determine that Anchor's rights were not directly and immediately affected by the order of distribution and therefore we dismiss this action because of mootness.

On May 5, 1983, a lawsuit was filed in the circuit court of Cook County by Felix and Hattie Stallings, individually and on behalf of their minor child, Ian Stallings, against several defendants, including Lito Fajardo, Chicago Heights Anesthesia Associates, St. James Hospital, and the Sisters of St. Francis Health Services. In their fourth amended complaint, plaintiffs alleged that as a result of defendants' negligence the minor plaintiff suffered extreme brain damage.

Anchor, a health maintenance organization, was not a party to this action. Its involvement in this action stems from its coverage of the Stallings family, including the minor plaintiff, for medical care. Under the terms of the Anchor subscription certificate, which governs the rights and obligations of Anchor with respect to its subscribers, Anchor is the possessor of a contractual lien. This gives Anchor the right to recover the value of medical services rendered to a beneficiary if the beneficiary receives a trial award or settlement for injuries alleged to have been caused by a third person.

The parties to this lawsuit reached a settlement agreement after participating in at least two pretrial conferences at which counsel for Anchor was present. Counsel for Anchor, along with counsel for the parties, appeared before Judge Harry S. Stark on November 21, 1985, and November 25, 1985, to discuss settlement of this action. The case was ultimately settled for a total of $6.2 million and on December 24, 1985, the circuit court entered an order of dismissal and an order of distribution in accordance with the terms of the settlement. In the order of distribution, the circuit court expressly found that the settlement was "fair, just and made in good faith." Defendants have fully satisfied their obligations under the settlement agreement.

On January 22, 1986, Anchor presented a motion to vacate, *instanter*, and specified portions of the circuit court's orders that An-

chor asserted adversely affected its rights. Judge Bosco denied Anchor's motion for hearing *instanter* and set a briefing schedule. Anchor never obtained a ruling on the motion to vacate.

On January 23, 1986, Anchor filed its notice of appeal from certain portions of the order of dismissal and distribution entered on December 24, 1985. The circuit court entered its order on January 30, 1986, which order approved the settlement of the minor plaintiff's action. On February 28, 1986, Anchor filed a second notice of appeal. This notice of appeal related to the January 30 order and also incorporated by reference all matters contained in the first notice of appeal. This court, on April 17, 1986, consolidated the two appeals.

OPINION

■ The general rule is that before a person not a party to a proceeding can appeal he must have a direct interest in the subject matter of the litigation, which interest is prejudiced or aggrieved by the judgment sought to be reviewed. (*American Surety Co. v. Jones* (1943), 384 Ill. 222, 51 N.E.2d 122.) In other words, a direct, immediate and substantial interest rather than a speculative, theoretical, inconsequential or remote interest is the test as to whether a person or company may have a right of review. *American Surety Co. v. Jones* (1943), 384 Ill. 222, 51 N.E.2d 122.

Anchor does not dispute the validity of the order with regard to the release of their pending lien. They contend only that their future liens may be affected. Specifically, Anchor contends that the mere possibility that it may be precluded from seeking future reimbursement due to the language of the order of dismissal in itself warrants action by this court.

Paragraph four of the order of dismissal provides:

"4. The aforementioned payment to Anchor Organization for Health Maintenance and Rush Presbyterian St. Luke's Medical Center, Inc. RELEASES AND DISCHARGES ALL CLAIMED LIENS AND SUBROGATION RIGHTS OF ANCHOR ORGANIZATION FOR HEALTH MAINTENANCE and Rush Presbyterian St. Luke's Medical Center against Ian Stallings, a minor, by and through his father and next friend, Felix Stallings, Felix Stallings, Hattie Stallings, LITO FAJARDO, CHICAGO HEIGHTS ANESTHESIA ASSOCIATES, S.C., A CORPORATION, ST. JAMES HOSPITAL, A CORPORATION, AND SISTERS OF ST. FRANCIS HEALTH SERVICES, INC., A CORPORATION."

The order, Anchor contends, not only releases and discharges all of

their "claimed liens and subrogation rights," but also may preclude recovery by Anchor as to future reimbursements to which its lien and subrogation rights ought to apply as payments continue to be made.

■ We cannot address the issues posed by Anchor. An appellate court will not review a case merely to render a judgment to guide potential future litigation. (*La Salle National Bank v. City of Chicago* (1954), 3 Ill. 2d 375, 121 N.E.2d 486.) Because the existence of a real controversy is an essential requisite to appellate jurisdiction, where a reviewing court has notice of facts that show no actual controversy or dispute is involved, it will dismiss the appeal. (*La Salle National Bank v. City of Chicago* (1954), 3 Ill. 2d 375, 121 N.E.2d 486.) The function of courts is to decide controverted issues in adversary proceedings, thus cases that fail to present live issues will not ordinarily be entertained. (*People ex rel. Wallace v. Labrenz* (1952), 411 Ill. 618, 104 N.E.2d 769.) Such is the case here.

■ ■ A moot case is one which seeks to determine an abstract question which does not rest upon existing facts or rights or which seeks a judgment on a pretended controversy, when in reality there is none, or a decision in advance about a right before it has been actually asserted and contested. (*City of Chicago v. Airline Canteen Service, Inc.* (1978), 64 Ill. App. 3d 417, 380 N.E.2d 1106.) Here, the question as to how the order of dismissal will be interpreted in the event that Anchor seeks reimbursement is pure speculation. In the event that Anchor seeks a claim and is then barred by virtue of the order, then and only then has Anchor been adversely affected. The interpretation may be in Anchor's favor. The controversy may in fact never arise. It is not our function to give opinions upon moot questions or abstract propositions. *Johnson v. Quern* (1980), 90 Ill. App. 3d 151, 412 N.E.2d 1082.

Accordingly, the motions to dismiss which were taken with the case are granted and Anchor's appeal is dismissed.

Dismissed.

MURRAY, J., concurs.

PRESIDING JUSTICE SULLIVAN, specially concurring:

Anchor, which was not a party in the underlying lawsuit and did not agree to the order of distribution entered by the trial court, contends that it has standing to bring this appeal from that order because of an adjudication therein which was adverse to its legal rights and pecuniary interests.

The subscription certificate which required Anchor to pay medical benefits by reason of the injuries to the minor plaintiff here also gave it a lien for the amount of those payments against any recovery from a third party for those injuries. The order of distribution in question provided for payment to Anchor of the amount of the medical benefits it had paid up to the date of the order and it was then stated in paragraph four of the order that this payment "releases and discharges all claimed liens and subrogation rights" of Anchor against all the parties in the lawsuit. Anchor argues that its standing to appeal lies in the fact that the quoted language was an adverse adjudication which precluded its lien rights to recover for benefits it would be required to pay after the date of the order and the sole issue presented is whether the language did preclude any such rights of Anchor because standing is lacking if it did not.

In this regard it is noted that none of the appellees contend that the language is preclusive of Anchor's future rights. In fact, all of the defendants-appellees posit that "Anchor lacks standing to appeal because the order appealed from, by its express terms, affects only the lien claimed by Anchor as of the date of distribution and does not alter or affect Anchor's rights to future reimbursements." Likewise, plaintiffs-appellees argue only that Anchor's subscription certificate does not provide for future lien rights and that in any event, if such rights were provided for, they were waived by Anchor. While these arguments of plaintiffs-appellees could be raised as defenses to any action by Anchor to recover future benefits paid, they do not reach the question as to whether the distribution order precluded any right under the certificate to do so.

Thus, considering (a) that the quoted language in paragraph four of the order releases and discharges only "claimed liens" with no reference to future liens, (b) that all claimed liens of Anchor for reimbursement as of the date of the order were provided for in the order and (c) that none of the appellees contend that the quoted language in paragraph four was preclusive of any future lien rights that Anchor may have, I would find that it did not so preclude and it follows from such finding that Anchor did not have standing to appeal because there was no adjudication in the order of distribution adverse to any legal rights or pecuniary interests of it. In view thereof, I would dismiss the appeal for lack of standing.