[No. D029526. Fourth Dist., Div. One. Dec. 18, 1998.]

McMILLIN DEVELOPMENT, INC., Plaintiff and Respondent, v. HOME BUYERS WARRANTY et al., Defendants and Appellants.

**COUNSEL**

Gascou, Gemmill & Thornton, Bruce M. Thornton and Carlos V. Yguico for Defendants and Appellants.

Sobel & Custer, Janet E. Sobel and Patricia Jo Custer and for Plaintiff and Respondent.

## OPINION

**BENKE, J.**—In this case defendant and appellant Home Buyers Warranty (HBW)[1] raises one potentially meritorious issue: its right to a stay under Code of Civil Procedure[2] section 1281.4 during the pendency of an arbitration ordered by a federal district court in a related action. Our difficulty in providing any relief to HBW stems from the fact that it did not raise the stay issue in the trial court. Accordingly, and because we find no other error in the trial court's order denying HBW's petition to compel arbitration, we affirm the trial court's orders without prejudice to HBW's right to seek a stay on remand.

### FACTUAL AND PROCEDURAL SUMMARY

### A. *Prior Appeal*

This is not the first time this dispute has been subject to an appeal in our court. In a prior appeal, *McMillin Development, Inc. v. National Home Ins. Co.* (Jan. 29, 1997) D020369 and D020737 (nonpub. opn.), we set forth the factual background and the procedural history, up to that point, of HBW's dispute with plaintiff and respondent McMillin Development Inc. (McMillin). Because it is very helpful in understanding the issues raised on this appeal, we once again set forth pertinent portions of that factual background and procedural history.

### B. *Warranty Program and Builder Agreement*

After a lengthy period of negotiation in 1985, McMillin purchased a warranty program from HBW for homes McMillin was building. In addition, McMillin entered into a builder proposal and agreement (builder agreement).

#### 1. *Warranty Program*

When enrolled in HBW's warranty program, a builder would provide each home buyer with a warranty which promised to repair designated structural defects that occurred in a home within the first 10 years after it was built, up to the sales price of the home. The warranty required that a homeowner notify the builder of any claim and the builder in turn was required to notify

---

[1] In this action National Home Insurance Company and Southern Insurance Company are also named as defendants. Unless otherwise indicated, all references to HBW include these defendants.

[2] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

HBW within a reasonable period of time. In 1987 HBW revised the warranty to require that the builder carry out an initial evaluation of a homeowner's claim.

### 2. *Builder Agreement*

Under the builder agreement with HBW, HBW and the defendant insurers provided insurance coverage for any warranty claims which arose. In the standard form HBW used, coverage was predicated on a builder's compliance with the procedural requirements set out in the homeowner warranties.

In addition to providing coverage for defects covered by the warranties, under its standard builder agreement form, HBW agreed to provide builders with indemnity and a defense to any lawsuit growing out of any warranty claim denied by HBW.

### 3. *Addenda*

Because of concerns McMillin had with respect to defect claims that might not be covered under the builder agreement, McMillin sought a modification of HBW's standard form. As a result of those negotiations, HBW agreed to an addendum which expanded the definition of builder to include, in addition to McMillin, related entities and joint venturers. More importantly, the addendum provided that "[HBW] will be the *primary carrier* on structural claims subject to the terms and limitations of the Warranty."

The coverage provided by the addendum is at the heart of the parties' dispute. According to the person who represented McMillin in the negotiations with HBW, use of the term "primary carrier" in the addendum was designed to assure McMillin coverage in the event a homeowner did not use HBW's warranty procedure but instead simply sued McMillin directly.

On the other hand, HBW, relying on the phrase "subject to the terms and conditions of the Warranty," asserted that under the addendum, HBW would not provide McMillin with indemnity or a defense unless HBW had made a claims decision on the particular claim being asserted. According to HBW, the primary carrier language was only intended to assure McMillin that if a defect was also covered by an individual homeowner's policy, HBW coverage would be primary to the homeowner policy, thereby protecting McMillin from any subrogation action by the homeowner's carrier.

In 1987 HBW agreed to a second addendum. The second addendum grew out of a 1987 change HBW made to its builder agreement by which builders

were required to evaluate claims before reporting them to HBW. Because McMillin was concerned that it might be held liable for errors in its handling of claims, HBW provided McMillin with a second addendum under which HBW agreed to defend and indemnify McMillin for claims and liability arising from McMillin's investigation of any homeowner complaints. The second addendum repeated the "primary carrier" provision of the first addendum.

### 4. *Spector Claim*

Ida Spector bought a home in one of McMillin's subdivisions before McMillin began participating in the HBW warranty program. Nonetheless, under a grandfather provision in its agreement with McMillin, HBW had agreed Spector's home would be covered by a warranty and subject to the builder agreement.

On November 13, 1989, Spector sued McMillin for alleged defects in her home. Although Spector's counsel had contacted McMillin in April 1989, McMillin had not been able to inspect Spector's home before suit was filed.

On December 9, 1989, McMillin gave HBW notice of Spector's claim. On December 27, 1989, HBW responded to McMillin's notice and advised McMillin that it did not believe Spector's claim was within the scope of the warranty program and builder agreement. Later, in April 1990, HBW formally denied Spector's claim.

McMillin also tendered defense of the Spector claim to its liability insurers, which eventually provided McMillin with a defense. The Spector case went to trial and McMillin obtained a defense verdict.

### 5. *Complaint*

In October 1990 McMillin filed a complaint against HBW. McMillin alleged that HBW had improperly refused to provide McMillin with a defense in the Spector action. McMillin alleged this conduct gave rise to causes of action for breach of contract, breach of the covenant of good faith and fair dealing, declaratory relief, fraud and negligent misrepresentation. HBW and the insurers demurred to the complaint and McMillin amended it

three times. Eventually, McMillin added causes of action for reformation and rescission.[3]

### 6. *Summary Adjudication*

The parties filed cross-motions for summary judgment. On January 31, 1992, the trial court denied McMillin's motion for summary judgment as to its complaint and granted HBW's motion in part. In particular, the trial court determined McMillin was not entitled to a defense of the Spector claim. Although not asserted by HBW as a defense, the trial court reasoned the builder agreement and its addenda "only require[] a duty to defend against claims against the Builder for improper claims' handling."

Shortly before trial, the trial court modified its initial interpretation of the addenda. By way of its modified interpretation, the trial court found HBW's duty to defend had not been triggered because McMillin had failed to follow the claims procedure required under the builder agreement and warranty program.

### 7. *Trial*

The case proceeded to a jury trial on McMillin's fraud cause of action. Because of the trial court's interpretation of the addenda to the builder agreement, the trial court "nonsuited" McMillin's breach of contract and bad faith claims and instructed the jury that HBW had no contractual duty to defend the Spector suit because McMillin failed to comply with procedural requirements set forth in the warranty and builder agreement.

In the course of presenting its fraud case, McMillin presented evidence from its officers, officers of HBW and correspondence between the parties during negotiation of their agreements. By way of its case, McMillin attempted to show that it reasonably expected HBW to provide it protection from lawsuits such as Spector's, for which no claim had been processed by either McMillin or HBW and that HBW was aware of McMillin's expectations.

The jury, by special verdict, found that HBW in fact had promised to provide McMillin with coverage for claims such as Spector's but intentionally failed to do so. However, the jury found that McMillin had not suffered

---

[3]HBW filed a cross-complaint against McMillin, alleging McMillin had improperly enrolled the Spector home in the warranty program and was therefore liable for fraud and breach of contract. McMillin moved for summary judgment as to the cross-complaint prior to trial and its motion was granted.

any damage as a result of HBW's false promise because of the defense McMillin obtained from its liability insurers.

Following rendition of the jury's verdict, the trial court conducted a trial on McMillin's declaratory relief, rescission and reformation actions. The trial court found that there had been a mutual mistake of fact as to the meaning of the contract and reformed it to provide that HBW would provide a defense, "regardless of whether there has first been an HBW claims decision or an arbitration." The trial court, relying on *Brandt* v. *Superior Court* (1985) 37 Cal.3d 813 [210 Cal.Rptr. 211, 693 P.2d 796], found that McMillin was entitled to recover $149,832.11 of the attorney fees it had expended in this case.

### 8. *New Trial Order*

McMillin moved for a new trial as to the damages available for fraud and as to the "nonsuited" breach of contract and bad faith causes of action. The trial court granted a complete new trial on all of McMillin's claims. The trial court found that it had erred in determining as a matter of law that the addenda provided a defense only after a homeowner had made a warranty claim and the claim had been submitted to HBW. The trial court concluded that its error had an adverse impact on all subsequent proceedings in the case.

McMillin filed a timely notice of appeal from the order granting a complete new trial.

On appeal McMillin argued that the trial court should have limited the new trial to the question of damages alone and that it was entitled to judgment as a matter of law as to HBW's liability for breach of contract. Because we found that the issues of fraud, breach of contract and bad faith were all dependent upon a factfinder's eventual interpretation of the addenda, we found no abuse of discretion in the order requiring a complete new trial. We also rejected McMillin's contention it had shown HBW was liable for breach of contract and bad faith as a matter of law.

### C. *Federal Proceedings*

While McMillin's prior appeal was pending in this court, McMillin filed a second lawsuit in superior court against HBW in which it alleged that HBW had failed to provide it a defense with respect to claims brought by the purchasers of another home in one of McMillin's developments. The purchasers whose claims gave rise to the second lawsuit were Morice and Vanda Mumby.

The claims asserted in McMillin's Mumby lawsuit were almost a mirror image of the claims it had asserted in the Spector litigation: the Mumbys had been given an identical version of the warranty given to Spector; they had made defect claims against McMillin; those claims had been rejected by HBW; the Mumbys thereafter sued McMillin; and HBW failed to provide McMillin with a defense to the suit. McMillin alleged HBW's handling of the Mumby claim gave rise to claims for fraud, breach of contract and breach of the covenant of good faith and fair dealing.

HBW removed McMillin's Mumby lawsuit to federal district court and relying on arbitration clauses in the builder agreement and in the homeowner warranty, HBW moved to compel arbitration of McMillin's Mumby claims. McMillin opposed the motion, arguing that the parties never intended that claims for a defense under the terms of the addenda would be subject to arbitration. The district court granted the motion to compel arbitration of McMillin's Mumby claims, finding that an agreement to arbitrate McMillin's claims did exist.

### D. *Proceedings in This Case Following Remand*

Our remittitur in McMillin's prior appeal in this case was filed in the trial court shortly after the district court's order compelling arbitration of McMillin's Mumby lawsuit.

Almost immediately upon remand to the trial court, HBW filed a motion to compel arbitration of the claims McMillin has been asserting in these proceedings. HBW pointed out that the builder agreement covering Spector's home and the warranty Spector received contained arbitration provisions identical to the ones covering the Mumby home and that therefore the district court's ruling on HBW's motion to compel arbitration of the Mumby claims required, under principles of res judicata, that McMillin's Spector claims also be arbitrated.

With some vigor, McMillin argued the district court's ruling was not sufficiently final to warrant application of res judicata principles and that in any event HBW had waived its right to arbitrate McMillin's Spector claims.

The trial court agreed with McMillin in part. The trial court found that the district court's order compelling arbitration was res judicata with respect to issues the district court decided, including in particular the arbitrability of McMillin's and HBW's dispute over the meaning of the addenda. However, the trial court found that the district court had not decided whether HBW had waived its right to arbitrate the claims McMillin asserts in this case. The trial

court then found that in fact HBW waived the right to arbitrate the particular claims McMillin has been pursuing in this case since 1990. Accordingly, the trial court denied HBW's motion to compel arbitration.

HBW filed a timely notice of appeal.[4]

## DISCUSSION

### I

 HBW contends that in compelling arbitration of the McMillin's Mumby lawsuit, the district court necessarily decided that HBW had not waived its right to arbitrate McMillin's Spector claims. We reject this contention.

We will assume, without deciding, that the district court order compelling arbitration is entitled to application of res judicata principles. (See *Levy* v. *Cohen* (1977) 19 Cal.3d 165, 172-173 [137 Cal.Rptr. 162, 561 P.2d 252]; *Wilder* v. *Whittaker Corp.* (1985) 169 Cal.App.3d 969, 973 [215 Cal.Rptr. 536].)[5] However, as the trial court pointed out in its order, the district court's order has no collateral estoppel or res judicata effect with respect to issues not actually decided by the district court in rendering its decision. "In order for the determination of an issue to be given preclusive effect, it must have been necessary to a judgment. This requirement 'prevent[s] the incidental or collateral determination of a nonessential issue from precluding reconsideration of that issue in later litigation.' [Citation.] The requirement 'is necessary in the name of procedural fairness, if not due process itself, so that parties to litigation have sufficient notice and incentive to litigate

---

[4]McMillin moved to dismiss the appeal on the grounds it was frivolous and brought solely as a means of delaying disposition McMillin's claims. We denied the motion to dismiss but ordered that the appeal be heard on an expedited basis.

[5]We recognize that in its cross-appeal, McMillin asks us to find that the district court's order compelling arbitration was not res judicata with respect to the issues decided by the district court because that order will not be subject to appeal until the arbitration is complete. We decline to reach McMillin's argument. First, in light of the trial court's waiver determination and our agreement with that determination, any discussion of the res judicata issue would be unnecessary dicta. Second, the district court's order will be subject to appellate review when an arbitration decision has been rendered and confirmed by the district court. (See *Prudential Ins. Co. of America* v. *Lai* (9th Cir. 1994) 42 F.3d 1299, 1301-1302.) Thus, notwithstanding possible application of the federal rule under which trial court judgments are given res judicata effect even if they are subject to appeal (see *Levy* v. *Cohen, supra,* 19 Cal.3d at pp. 172-173), our views as to the current res judicata effect of the district court's arbitration order will eventually be rendered moot upon resolution, following any appeal, of the federal action. In short, we see little utility in deciding an issue which is unnecessary to disposition of this appeal and which, in all likelihood, will be resolved in another forum.

matters in earlier proceedings which may bind them in subsequent matters.' " (*Sandberg* v. *Virginia Bankshares, Inc.* (4th Cir. 1992) 979 F.2d 332, 346.) Importantly, HBW bore the burden of demonstrating that the waiver issue was actually determined by the district court. (7 Witkin, Cal. Procedure (4th ed. 1997) Judgment, § 355, p. 918.)

Our review of the record shows that HBW did not meet its burden. As McMillin notes, the face of the district court's order does not reach the waiver question. This is no doubt because although McMillin made extensive references to the procedural history of this case in opposing HBW's motion to compel arbitration of its Mumby claims, McMillin used those references not in arguing that HBW had waived it right to arbitrate, but as evidence that the parties had never intended that claims under the addenda would be arbitrated.

The only express reference to waiver in the papers McMillin filed in district court was its contention that it was entitled to a jury trial on the question of whether HBW's right to arbitrate was barred by the doctrines of estoppel and waiver. Thus, the most HBW can demonstrate with respect to litigation of the waiver issue in the federal action is that McMillin argued that HBW's failure to assert its right to arbitrate in this proceeding *might* prevent HBW from seeking arbitration of the claims asserted in McMillin's Mumby lawsuit. Plainly, in granting HBW's motion and refusing to order a jury trial on the waiver and estoppel issues, the district court was not required to decide that no waiver had occurred in this case. Rather, all the district court was required to determine was that any waiver in this case would have no bearing on HBW's right to arbitrate future McMillin claims growing out of separate defect complaints by other unsatisfied homeowners, such as the Mumbys. Indeed, given the separate factual origins of the Spector and Mumby claims, it is difficult to accept the notion that the district court intended its silence on the waiver issue to be interpreted as a determination of the legal significance of matters which occurred in a separate case pending in a separate forum. (See, e.g., *Keating* v. *Superior Court* (1982) 31 Cal.3d 584, 605-607 [183 Cal.Rptr. 360, 645 P.2d 1192] [waiver as to one claim not necessarily waiver as to new and different claim].)

In sum, the trial court did not err in reaching the merits of McMillin's waiver argument because nothing in the district court's ruling or the pleadings submitted to it suggest the waiver issue was decided by the district court.

## II

■ Next, HBW argues that in resolving the merits of McMillin's waiver argument, the trial court should have given preclusive effect to a rule of the American Arbitration Association (AAA). Again, we disagree.

The arbitration clause in the builder agreement states: "Any disputes that arise between the HOMEBUYER(s), BUILDER, SERVICE or insurance company as to satisfactory compliance with the warranty documents or construction standards will be dealt with through conciliation between the parties or arbitration administered by the AMERICAN ARBITRATION ASSOCIATION (A.A.A.) or other mutually agreeable arbitration service in accordance with their arbitration rules and regulations (see arbitration section)."

Rule 26(a) of AAA's Home Warranty Arbitration Rules in turn states: "No judicial proceeding by a party relating to the subject matter of the arbitration shall be deemed a waiver of the party's right to arbitrate."

HBW argues that notwithstanding the nearly seven years of litigation which elapsed before it moved to compel arbitration, including extensive discovery not available in arbitration proceedings, a jury trial and an appeal to this court, AAA's rule 26(a), which itself is only incorporated in the parties' agreement by reference, preserved its right to arbitrate. Among the difficulties we have with this argument is the fact that no other court has accepted such an expansive interpretation of the AAA rule. At most, the courts which have addressed the issue have held that the AAA's "no waiver" rule means that participation in a judicial proceeding, will not *by itself* give rise to a waiver. (See *People* ex rel. *Delisi Const., Co., Inc.* v. *Board of Ed.* (1975) 26 Ill.App.3d 893 [326 N.E.2d 55, 57] [because of limited prejudice to opponent and no waiver rule, party could challenge in judicial forum the existence of a contract containing arbitration clause and when unsuccessful in doing so then demand arbitration as to whether breach of contract had occurred]; *Kostakos* v. *KSN Joint Venture No. 1* (1986) 142 Ill.App.3d 533 [96 Ill.Dec. 862, 491 N.E.2d 1322, 1325-1326] [party could assert right to arbitration where trial court found no prejudice to opponent and where "no waiver" rule indicated parties' preference for arbitral forum].) Indeed, one court has expressly held that a "no waiver" rule does not prevent a waiver where participation in a judicial proceeding has caused prejudice to an adversary. (*Joba Const. Co.* v. *Monroe County Drain Com'r* (1986) 150 Mich.App. 173 [388 N.W.2d 251, 254].) "[The no waiver rule] should be considered as a factor. However, if it were to be interpreted to mean that no court proceeding could ever constitute a waiver of arbitration, it would run

afoul of [the statute giving trial courts power to exert equitable power over arbitration proceedings]." (*Ibid.*)

Although no California case has considered application of such a "no waiver" rule, we believe that the authority which does exist compels a limited, rather than expansive, interpretation of such rules. We note that under Code of Civil Procedure section 1281.2, subdivision (a), the superior court is expressly given the power to deny arbitration where it has been waived and that our case law has carefully articulated the limited circumstances which will give rise to a waiver. (See *Christensen* v. *Dewor Developments* (1983) 33 Cal.3d 778, 782 [191 Cal.Rptr. 8, 661 P.2d 1088].) These cases have found that waiver occurs when, by virtue of delay, a party has deprived his opponent of the efficiency that would have otherwise been available in an artibral forum. (*Id.* at pp. 783-784.) Our case law has emphasized the importance of prejudice in determining whether a waiver has occurred: "[We have] stressed the 'significance of the presence or absence of prejudice. Waiver does not occur by mere participation in litigation; there must be "judicial *litigation* of the merits of arbitrable issues" [citation], although "waiver could occur prior to a judgment on the merits if prejudice could be demonstrated" [citation].' [Citation]." (*Id.* at p. 782.)

Similar power to deny arbitration has been found under the Federal Arbitration Act, 9 United States Code section 1 et seq. (See *Williams* v. *CIGNA Financial Advisors, Inc.* (5th Cir. 1995) 56 F.3d 656, 661; *Miller Brewing Co.* v. *Fort Worth Distributing Co., Inc.* (5th Cir. 1986) 781 F.2d 494, 496; *Rush* v. *Oppenheimer & Co.* (2d Cir. 1985) 779 F.2d 885, 887.)

In light of these authorities, we have serious doubt that by virtue of its adoption of a rule the AAA can deprive courts of their power over parties who have without objection appeared before them and obtained rulings from them. Thus, we interpret the AAA's rules as consistent with rather than in derogation of the powers courts have over parties seeking arbitration. Accordingly, under both the rules and well-established legal principles parties may participate in judicial proceedings without losing the right to arbitrate only so long as their participation does not substantially prejudice the rights of their opponents.

### III

HBW contends that in any event McMillin did not show that it had suffered any prejudice as a result of HBW's failure to request arbitration earlier in these proceedings. To borrow a phrase from our esteemed colleague from the Court of Appeal for the Second District, Justice Gilbert,

"Not so." (*Nacimiento Regional Water Management Advisory Com.* v. *Monterey County Water Resources Agency* (1993) 15 Cal.App.4th 200, 208 [19 Cal.Rptr.2d 1].)

By virtue of the discovery conducted thus far, the motions heard in the trial court, and McMillin's appeal, HBW has gained, at considerable expense to McMillin, a plenary opportunity to test both the legal validity of McMillin's claims and their factual persuasiveness. Having used considerable judicial resources to complete this testing, HBW has found that McMillin's claims have both a legal basis and some factual currency.

The myriad of rulings HBW has received on the merits of the dispute constitute judicial litigation of those issues which, while not final, are sufficient to prevent HBW from moving this dispute to a forum it apparently believes will present less risk to it. McMillin has been severely prejudiced here in that it has been exposed to all the additional expense and risks of litigation and although it too is a party to the arbitration agreement, it has received none of the efficiencies that would have been available to it by way of arbitration. As the court in *Christensen* v. *Dewor Developments, supra,* 33 Cal.3d at page 784, said in rejecting such gamesmanship: " 'The courtroom may not be used as a convenient vestibule to the arbitration hall so as to allow a party to create his own unique structure combining litigation and arbitration.' [Citation.]"

## IV

■ This brings us to the one potentially meritorious issue raised by HBW on appeal.

Section 1281.4 provides in pertinent part: "If a court of competent jurisdiction, whether in this State or not, has ordered arbitration of a controversy which is an issue involved in an action or proceeding pending before a court of this State, the court in which such action or proceeding is pending shall, upon motion of a party to such action or proceeding, stay the action or proceeding until an arbitration is had in accordance with the order to arbitrate or until such earlier time as the court specifies.

". . . . . . . . . . . . . . . . . . . . . . .

"If the issue which is the controversy subject to arbitration is severable, the stay may be with respect to that issue only."

Plainly, one of the purposes of this statute "is to promote the expeditious and efficient settlement of disputes and eliminate multiplicity of actions." (*Los Angeles Police Protective League* v. *City of Los Angeles* (1985) 163

Cal.App.3d 1141, 1149 [209 Cal.Rptr. 890], overruled on other grounds *Laurel Heights Improvement Assn.* v. *Regents of University of California (1988)* 47 Cal.3d 376, 427 [253 Cal.Rptr. 426, 764 P.2d 278].)

Here, in light of the fact that interpretation of the addenda will be determined in the arbitration ordered by the district court, a stay of these proceedings under section 1281.4 may be required in order to avoid inconsistent rulings. However, our ability to reach any determination as to the propriety of a stay under section 1281.4 is undermined by the fact that HBW made no application for such a stay in the trial court,[6] and accordingly we have no ruling from the trial court on the issue.

It is axiomatic that as a court of review we usually decline to review issues which have not yet been considered in trial courts. (See 9 Witkin, Cal. Procedure, *supra*, Appeal, § 394, pp. 444-445.) Here, this limitation on the scope of our review is consistent with the practical reality that by the time our remittitur on this appeal issues, the arbitration ordered by the district court may be complete and there may be no need for a stay.

Accordingly, without prejudice to HBW's right to bring a motion under section 1281.4 upon remand, we decline to reach the merits of HBW's stay argument.

Orders affirmed. Respondent to recover its costs of appeal.[7]

Work, Acting P. J., and Nares, J., concurred.

Appellants' petition for review by the Supreme Court was denied April 14, 1999.

---

[6]The only reference to a stay in HBW's papers appears in its initial motion to compel arbitration; the motion states that HBW will move "[f]or an order staying the further prosecution of McMillin's Fourth Amended Complaint, until the conclusion of any arbitration proceeding ordered by this Court." This reference, which apparently only seeks a stay in the event arbitration was ordered by the trial court, was not sufficient to alert either the trial court or McMillin that, even if arbitration was not ordered, HBW was seeking a stay based upon section 1281.4.

[7]Although unsuccessful, the arguments advanced by HBW are not wholly unreasonable and it is not clear to us they were asserted in bad faith. Accordingly, we deny McMillin's request for sanctions. (See *In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 649 [183 Cal.Rptr. 508, 646 P.2d 179].)