No. 4-98-0570

3 August 1999

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

STATE FARM MUTUAL AUTOMOBILE INSURANCE  ) Appeal from

COMPANY,  ) Circuit Court of

Plaintiff,  ) McLean County

v.  ) No. 95L310

GEORGE HYMAN CONSTRUCTION COMPANY, n/k/a  )

THE CLARK CONSTRUCTION GROUP, INC.,  )

Defendant-Appellant,  )

and  )

ASSOCIATED CONTRACTORS CO., INC.; MARLEY  )

COOLING TOWER CO.; F.E. MORAN, INC.,  )

FIRE PROTECTION, and THE FIDELITY AND  )

GUARANTY INSURANCE COMPANY and UNITED  )

STATES FIDELITY AND GUARANTY COMPANY,  )

its Sureties; THRALL DISTRIBUTION, INC.,  )

f/k/a WILKINS PIPE & SUPPLY CO., INC.;  )

AMERICAN FIRE AND ELECTRICAL SYSTEMS;  )

ROBERT IRSAY, DIVISION OF JUPITER  )

MECHANICAL INDUSTRIES, INC.; ECONOMY  )

MECHANICAL INDUSTRIES, INC., and NATIONAL )

UNION FIRE INSURANCE CO. OF PITTSBURGH,  )

PA., its Surety; FISCHBACH & MOORE, INC., )

and NATIONAL UNION FIRE INSURANCE CO. of  )

PITTSBURGH, PA., its Surety; EGAN  ) 

MECHANICAL CONTRACTORS, INC., and GENERAL ) 

ACCIDENT INSURANCE COMPANY OF AMERICA,    )

its Surety; J.A. HOUSE, INC.; PERMA-PIPE, )

INC.; and SEABOARD SURETY CO., its Surety;)

THE LEVY COMPANY and ST. PAUL FIRE &  )

MARINE INSURANCE CO., its Surety; A.A.    )

CONTE & SON, INC.; CENTRAL SUPPLY COMPANY;)

GIBSON ELECTRIC CO., INC., CARROLL E.     )

LANE, d/b/a THE LANE COMPANY; AMERICAN  )

HOME ASSURANCE CO. and NATIONAL UNION FIRE)

INSURANCE CO. OF PITTSBURGH, PA., and  )

FEDERAL INSURANCE CO. and SEABOARD SURETY )

CO. and ST. PAUL FIRE & MARINE INSURANCE  )

CO., Sureties for Clark; CONCEPT PLUMBING,)

INC., and UNITED FIRE & CASUALTY COMPANY, )

its Surety; PHOENIX AIR CONTROL, INC.;  )

MIDWEST INSULATION CONTRACTORS, INC.;  )

JOHNSON CONTROLS, INC.; and JADE  ) Honorable

CARPENTRY CONTRACTORS,  ) Ronald C. Dozier, 

Defendants-Appellees.  ) Judge Presiding.

_________________________________________________________________

JUSTICE McCULLOUGH delivered the opinion of the court:

On November 13, 1995, State Farm Mutual Automobile Insurance Company (State Farm) filed suit against Clark Construc­

tion Group, Inc. (Clark) (then known as George Hyman Construction Company (Hyman)), Clark's subcontractors, and their respective sureties for breach of a contract to construct a large office building.  Clark and its subcontractors filed cross-claims against each other.  Now Clark has settled with State Farm and seeks to have the remaining cross-claims between it and the subcontractors arbitrated.  The primary issues on appeal are whether the remain­ing cross-claims fall within the scope of the subcontracts' arbitration clause and whether Clark is procedural­

ly barred from seeking arbitration.  The trial court denied arbitration, and Clark is before this court on interlocutory appeal.  We affirm.

I.  BACKGROUND

On March 10, 1992, Hyman entered into a contract (prime contract) with State Farm to act as a general contractor for the construction of the State Farm Corporate South project, which consisted of seven new multistory office buildings, related support structures, and site improvements.  The construction contract was detailed in a series of "Contract Documents."  A second phase of construction, providing for three additional buildings, was later added.

Hyman eventually restructured and became Clark.  Clark subcontracted various portions of the work to Associated Contrac­

tors Company, Inc.; Marley Cooling Tower Company (Marley); F.E. Moran, Inc., Fire Protection (Moran); Thrall Distribution, Inc., f/k/a Wilkins Pipe and Supply Company, Inc.; American Fire and Electrical Systems; Robert Irsay, division of Jupiter Mechanical Industries, Inc.; Economy Mechanical Industries, Inc. (Economy); Fischbach & Moore, Inc. (Fischbach); Egan Mechanical Contractors, Inc. (Egan); the Levy Company (Levy); A. A. Conte & Son, Inc. (Conte); Central Supply Company; Gibson Electric Company, Inc. (Gib­son); Carroll E. Lane, d/b/a the Lane Company; Concept Plumbing, Inc. (Con­cept); Phoenix Air Control, Inc. (Phoenix); Midwest Insula­tion Contractors, Inc. (Midwest); Johnson Controls, Inc.; J.A. House, Inc. (House); and Jade Carpentry Contractors (Jade).  The parties agree that the subcontracts are identical for all purpos­es relevant to this appeal.  Each subcontract incorporates the provisions of the contract documents as to that subcontractor's work.

Article 11 of the subcontracts provides, in part:

"b.  In the case of any dispute between [Clark] and Subcontractor, in any way relat­

ing to or arising from any act or omission of [State Farm] or involving the Contract Docu­ments, Subcontractor agrees to be bound to [Clark] to the same extent that [Clark] is bound to the [State Farm], by the terms of the Contract Documents, and by any and all preliminary and final decisions or determina­

tions made thereunder by the party, board or court so authorized in the Contract Documents or by law, whether or not Subcontractor is a party to such proceedings.  *** 

c.  Any controversy between [Clark] and Subcon­tractor not relating to or arising from any action or inaction of [State Farm] and not involving the Contract Documents shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association [(AAA)].  ***  If [Clark] notifies Subcontractor that [Clark] contends any arbitration brought under this Article 11.c. involves a contro­

versy within the scope of Article 11.b., the arbitration shall be stayed until the proce­

dures under Article 11.b. are completed and it is determined thereunder that the contro­

versy does not fall within 11.b."

During construction, several of the subcontractors and material suppliers asserted claims and filed mechanics liens against the subject property.  In response, on November 13, 1995, State Farm filed suit against Clark and the subcontractors to foreclose the mechanics liens pursuant to section 30 of the Illi­

nois Mechan­ics Lien Act (Lien Act) (770 ILCS 60/30 (West 1994)).  In addi­tion, State Farm sought damages in excess of $12.5 million for the late completion of the project and damages of over $20 million for various breaches of the prime contract.  Clark and several of the subcontractors filed counterclaims against State Farm.  

On November 15, 1996, Clark filed cross-claims against the subcontractors.  These were "pass-through" contribution or indemnification claims for State Farm's claims against Clark arising from the subcontractors' breaches.  Clark also sued the subcontractors' sureties and sought indemnification for claims against it by other subcontractors.  On November 27, 1996, Clark moved to foreclose its mechanics lien. 

The subcontractors also filed cross-claims against Clark.  Egan and House alleged State Farm and Clark were jointly and severally liable for tortious interference with the subcon­tracts, making unreasonable demands, failing to give reasonable time extensions, interfering with scheduling and staffing, and failing to respond to adverse site conditions.  Economy, Egan and House alleged breaches of subcontract due to these actions.  Concept, Economy, Levy, Egan, House, and Moran alleged Clark failed to coordinate and supervise work on the project, causing unnecessary work and extra costs.  Concept, Egan, and House sought equitable reformation of the contract due to demands from Clark and State Farm amounting to cardinal changes.  

Levy, Moran, Egan, Concept, and House alleged Clark wrongfully withheld monies paid to it by State Farm for work they performed.  Conte, Egan, Moran, Concept, Gibson, Levy, and Economy sued Clark's sureties for money owed to them under the subcontracts for materials and services rendered.  Concept, Economy, Levy, Gibson, Conte, Egan, and Moran sued to foreclose mechanics liens.  Concept, Economy, Levy, and Moran brought separate actions to hold Clark and State Farm jointly liable under section 28 of the Lien Act (770 ILCS 60/28 (West 1994)).  Concept, Economy, and Gibson sought recovery under a 
quantum
 
meruit
 theory for materials and supplies they had provided to the project.

Clark's answer to the cross-claims of Egan and House is not included in the appellate record.  In Clark's answers to the remaining subcontractors' cross-claims, it asserted several affirmative defenses unrelated to its own cross-claims.  The affirmative defenses against Gibson, Economy, Levy, Moran, and Concept also incorporated by reference Clark's cross-claim against the subcontractors.  They alleged these subcontractors breached the subcontracts and were estopped from asserting their claims for the reasons stated in Clark's cross-claim.  Clark alleged it was entitled to offset damages for breach of subcon­

tract against the subcontractors' claims or to recover such amounts in recoup­ment.  The affirmative defenses against all of these subcontrac­tors except Gibson alleged the subcontractors had not complied with all conditions precedent for their claims.

On February 24, 1997, Levy moved to dismiss Clark's cross-claim against it, arguing, 
in part, the arbitration clause in the subcontract required this claim to be arbitrated.  On April 21, 1997, Clark responded to the motion to dismiss, stating several ways in which Levy's claims related to the prime contract documents.  Clark argued in the alternative that it was premature to determine if the cross-claims involved State Farm and the contract documents until evidence was heard on the merits.  Levy's motion was denied.

On June 12, 1997, Gibson filed a motion similar to Levy's, seeking dismissal of Clark's cross-claims against Gibson in the state court action, because the terms of the subcontract required arbitration of these cross-claims.  Clark filed a motion opposing arbitration, stating that the court already rejected Gibson's arguments in rejecting Levy's motion.  Clark also argued the dispute between Clark and Gibson related to State Farm's suit.

On July 30, 1997, Clark filed a motion for summary judgment against Conte, Concept, Moran, Gibson, Jade, and Levy, arguing they expressly waived certain claims.  This motion was denied.  Clark then engaged in extensive discovery directed at the subcontractors.

On March 4, 1998, the trial court referred this case to mediation.  On April 23, 1998, State Farm and Clark entered a settlement agreement whereby (1) State Farm agreed to dismiss all of its claims relating to the construction; (2) Clark agreed to dismiss its claims against State Farm and to obtain dismissal of the pass-through claims of its subcontractors; (3) State Farm agreed to make final payment of $3.6 million to Clark under the prime contract and to create a $1.15 million settlement fund for subcontractors; (4) Clark agreed to obtain release of the mechan­

ics liens filed by the subcontractors and certain of their material suppliers and to assume all liability to the subcon­

tractors' claims pending against State Farm, including the mechan­ics liens; and (5) State Farm and Clark agreed to move to dismiss all remaining subcontractor and material claims on the basis that they involve neither State Farm nor the contract documents.

On May 22, 1998, Clark filed a motion to compel arbi­

tration of all remaining claims between Clark and its subcontrac­

tors.  Clark also moved to release mechanics liens, dismiss subcontractor claims against State Farm, and dismiss subcontrac­

tor claims against Clark that involved State Farm or the contract documents.  When the subcontractors opposed dismissal of the mechanics lien claims, Clark sought a stay of all mechanics lien claims pending arbitration of the underlying claims against Clark.  Written orders denying the motion to compel arbitration and the motion to release mechanics liens were entered on July 9, 1998.  On July 22, 1998, Clark filed an interlocutory appeal from the order denying arbitration.  

II.  ANALYSIS

A.  Mechanics Liens

Clark argues the trial court erred by refusing to stay the subcontractors' mechanics lien claims.  We do not address this issue because Clark admitted in its reply brief that the mechanics liens have been released by the trial court.  This release renders any dispute as to the liens moot.  See 
Stallings v. Fajardo
, 157 Ill. App. 3d 913, 513 N.E.2d 404 (1987).

B.  The Choice of Law Provision

The parties dispute whether the federal Arbitration Act (FAA) (9 U.S.C. §1 
et
 
seq
. (1994)) or the Illinois Uniform Arbi­

tra­tion Act (710 ILCS 5/1 
et
 
seq
. (West 1994)) applies to their arbitration agreement.  Article 22.d. of the subcontracts states, "[u]nless otherwise provided in the Contract Documents, the terms and conditions of this Subcontract shall be interpreted in accordance with the laws of the jurisdic­tion in which the Project is located."  
We interpret this clause to reflect a choice of state over federal law.  
Volt Information Sciences, Inc. v. Board of Trustees of the Leland Stanford Junior University
, 489 U.S. 468, 474, 103 L. Ed. 2d 488, 497, 109 S. Ct. 1248, 1253 (1989).  Clark argues this choice of law clause is invalid as applied to the arbitration clause.  We disagree.

   Because the trial court did not hear evidence and decided the issue based only on the contracts, our review is 
de
 
novo
.  
City of Maroa v. Illinois Central R.R.
, 229 Ill. App. 3d 503, 505, 592 N.E.2d 660, 662 (1992).  

In 
Volt
, 489 U.S. at 479, 103 L. Ed. 2d at 500, 109 S. Ct. at 1256, the United States Supreme Court held that enforc­ing state rules of arbitration is consistent with the goals of the FAA when the parties have specified by contract that these rules should apply.  Therefore, a choice of law provision in 
Volt
 was valid, even though the state law chosen required a stay of arbitration that would not have been required under federal law.  
Volt
, 489 U.S. at 479, 103 L. Ed. 2d at 500, 109 S. Ct. at 1256.

Clark relies on 
Mastrobuono v. Shearson Lehman Hutton, Inc.
, 514 U.S. 52, 131 L. Ed. 2d 76, 115 S. Ct. 1212 (1995).  In that case, the Court was called upon to resolve an ambiguity in a standard form client agreement with a securities dealer.  
The agreement specif­ically provided that claims for punitive damages would be arbitrated.  It also had a general choice of law provi­

sion stating that New York law would apply.  However, New York law prohibited arbitra­tors from awarding punitive damages.  The Court concluded the New York choice of law clause was not intend­

ed to limit available damages.  
Mastrobuono
, 514 U.S. at 63-64, 131 L. Ed. 2d at 88, 115 S. Ct. at 1219. 

The contract in 
Mastrobuono
 required arbitration of punitive damages.  However, it included a choice of law provision applying New York law, which does not allow arbitration of punitive damages. 
 
Mastrobuono
, 514 U.S. at 58-59, 131 L. Ed. 2d at 84-85, 115 S.Ct. at 1216-17.  In resolving the ambiguity, the Court relied on the presumption, under the FAA, that all doubts con­cerning the scope of arbitrable issues should be resolved in favor of arbitration.  
Mastrobuono
, 514 U.S. at 62, 131 L. Ed. 2d at 87, 115 S. Ct. at 1218. 
 
Mastrobuono
 also relied on the presumption, under the common law, that an ambiguous contract should be construed against the drafter.  
Mastrobuono
, 514 U.S. at 62-63, 131 L. Ed. 2d at 87, 115 S. Ct. at 1219.

Mastrobuono
 has been read to mean that a general choice of law provision in a contract will not extend to the arbitration clause, absent specific evidence the parties intended it to do so.  
Ferro Corp. v. Garrison Industries, Inc.
, 142 F.3d 926, 934-

35 (6th Cir. 1998); 
Porter Hayden Co. v. Century Indemnity Co.
, 136 F.3d 380, 383 (4th Cir. 1998); 
Doctor's Associates, Inc. v. Distajo
, 107 F.3d 126, 131 (2d Cir. 1997).  

However, 
Mastrobuono
 did not overrule 
Volt
, which held a general choice of law provision could extend to an arbitration clause.  Instead, 
Mastrobuono
 distinguished 
Volt
, concluding it turned on deference to the state court's construction of the choice of law provision.  
Mastrobuono
, 514 U.S. at 60 n.4, 131 L. Ed. 2d at 86 n.4, 115 S. Ct. at 1217 n.4
; see also 
Porter Hayden Co.
, 136 F.3d at 383 n.6 (
Volt
 turned on deference to the state court).  Because this case arose in state court, it is within this court's authority to hold the general choice of law provi­

sion did extend to the arbitration clause.  Here, there is no direct conflict between the general choice of law provision and the arbitration clause.  We construe the choice of law clause against Clark, the drafter, and apply state law. 

C.  The Need for an Arbitration Clause

Subcontractor House never entered into a written subcontract with Clark.  This would bar any claim that House should be forced to arbitrate its claims.  See 
Yandell v. Church Mutual Insurance Co.
, 274 Ill. App. 3d 828, 833, 654 N.E.2d 1388, 1391 (1995).  While several sub-subcontractors have no direct contract or arbitration agreement with Clark either, this appeal is moot as to them because their only interest in it is due to their mechanics liens.

D.  Scope of This Arbitration Clause

The parties dispute the scope of articles 11.b and 11.c, which provide a dispute "in any way relating to or arising from any act or omission of" State Farm or involving the prime contract documents is not subject to arbitration.  No facts are in dispute.  Again, our review of the contract construction issue is 
de
 
novo
.  
City of Maroa
, 229 Ill. App. 3d at 505, 592 N.E.2d at 662.  

This case has placed the parties in an unusual posi­

tion.  Typically, we are asked to interpret an arbitration clause which sends disputes to arbitration if they "arise from or relate to" a construction contract.  Here, the subcontract uses similar language to define an exception to arbitration under the subcon­

tract.

Two phrases of the arbitration clause are at issue.  First, the subcontract bars arbitration in cases "involving" the prime contract documents.  An arbitration clause that provides "all disputes arising in connection with" a contract are to be arbitrated has been read narrowly to apply only to claims relat­

ing to matters specifically mentioned in the contract.  
Harrison F. Blades, Inc. v. Jarman Memorial Hospital Building Fund, Inc.
, 109 Ill. App. 2d 224, 230, 248 N.E.2d 289, 292 (1969); 
Roosevelt University v. Mayfair Construction Co.
, 28 Ill. App. 3d 1045, 1056-57, 331 N.E.2d 835, 844 (1975); 
Silver Cross Hospital v. S.N. Nielsen Co.
, 8 Ill. App. 3d 1000, 1002, 291 N.E.2d 247, 248-

49 (1972).  We read this exception to arbitration similarly.

However, the "contract documents" at issue here are broadly defined.  A subcontract may incorporate provisions of a general contract.  
Turner Construction Co. v. Midwest Curtainwalls, Inc.
, 187 Ill. App. 3d 417, 421, 543 N.E.2d 249, 251 (1989).  In this case, the prime contract, which was incorpo­

rated by reference into the subcontracts, defines "contract documents" to include the written agreement, any conditions, drawings, specifications, or addenda issued prior to execution of the contract, or a modification to the contract.  A modification is further defined in the prime contract to include a change order, a construction change directive, or a written order for a minor change in the work issued by the architect.

The second phrase excludes from arbitration "any dispute between [Clark] and Subcontractor, in any way relating to or arising from any act or omission" of State Farm.  Again, we turn for guidance to cases in which this language is used to define the positive scope of an arbitration agreement rather than an exception to it.  Arbitration clauses applying to disputes "relating to or arising from" a contract are given broader meaning than those governing disputes "in connection with" a contract.  
Roosevelt
, 28 Ill. App. 3d at 1056-57, 331 N.E.2d at 844.  
They have been read to send all matters relating to the subject matter of the contract to arbitration.  
J&K Cement Construction, Inc. v. Montalbano Builders, Inc.
, 119 Ill. App. 3d 663, 670-71, 456 N.E.2d 889, 895 (1983); 
Johnson v. Baumgardt
, 216 Ill. App. 3d 550, 559, 576 N.E.2d 515, 520 (1991).  

Similarly, here, the phrase "any dispute *** in any way arising from or relating to" defines a broad exception to arbi­

tration.  However, the substitution of "any act or omission" of State Farm for "contract documents" as the object of this phrase is signifi­cant.  Accordingly, in order for a dispute to be excluded from arbitration under this clause, it must be tied in some way to State Farm's actions or duties to act. 

For a dispute to fall under the article 11.b. arbitra­

tion exception, it must either relate to an issue referred to in the contract documents, broadly defined, or it must relate to State Farm's actions or duties to act under the prime con­tract.  Significantly, this interpretation leaves some role for article 11.c. in resolving disputes that do not meet this description.

E.  Waiver of the Right To Arbitrate

The subcontractors argue Clark waived the right to arbitrate by opposing arbitration earlier and participating in pretrial litigation.  A party may waive its rights to arbitra­tion when it conducts itself in a manner that is inconsistent with the arbitration clause, thereby indicating an abandonment of its contractual rights.  
Ure v. Wangler Construction Co.
, 232 Ill. App. 3d 492, 498-99, 597 N.E.2d 759, 764 (1992).

1.  "
No
 
Waiver
" 
Provision
 
of
 
American
 
Arbitration

Association
 (
AAA
) 
Rules

Clark notes the subcontracts incorporate the "no waiver" provision of the AAA Construction Industry Arbitration Rule 48(a), which pro­vides:  "No judi­cial proceeding by a party relating to the subject matter of the arbitration shall be deemed a waiver of the party's right to arbitrate."  AAA, Construction Industry Arbitration Rules, Rule 48(a) (see 2 M. Domke, Domke on Commercial Arbitration app. VII, at 28 (rev. ed. 1996) (hereinaf

ter Domke)); 3 T. Oehmke, Oehmke Commercial Arbitration app. C-1, at 17 (rev. ed. 1999) (as revised and in effect January 1, 1999) (hereinafter Oehmke).  Illinois courts have consis­tently applied this clause liter­al­ly when rejecting waiver arguments.  See 
Atlas v. 7101 Partner­ship
, 109 Ill. App. 3d 236, 240-41, 440 N.E.2d 381, 383 (1982) (interpreting identical language in AAA, Commer

cial Arbitration Rules, Rule 47(a) (see 2 Domke app. VII, at 10) (now Rule 50(a), as amended & eff. January 1, 1999 (3 Oehmke app. A-1, at 17))); 
Kostakos v. KSN Joint Venture No. 1
, 142 Ill. App. 3d 533, 537-38, 491 N.E.2d 1322, 1326 (1986) (same); 
People ex rel. Delisi Construc­tion Co. v. Board of Education, Willow Springs School District 108
, 26 Ill. App. 3d 893, 896, 326 N.E.2d 55, 57-58 (1975) (interpret­ing identical language in then-AAA, Con­struc­tion Industry Arbitra­tion Rules, Rule 46).

Though 
Atlas
 relied on the plain language of AAA Commercial Arbitration Rule 47(a), it also stressed that the movant only engaged in "limited legal maneuverings," such as filing a complaint and obtaining rulings on its motions for preliminary injunctions.  
Atlas
, 109 Ill. App. 3d at 241, 440 N.E.2d at 383.  
Atlas
 concluded these actions were not incon­sis­

tent with the arbitra­tion clause.  
Atlas
, 109 Ill. App. 3d at 240-41, 440 N.E.2d at 383.  Similarly, in 
Kostakos
 and 
Delisi
, the courts used AAA "no waiver" rule
s as addi­tional support while emphasiz­ing other facts that did not support waiver.  See 
Kostakos
, 142 Ill. App. 3d at 537-38, 491 N.E.2d at 1326; 
Delisi
, 26 Ill. App. 3d at 896, 326 N.E.2d at 57-58 (inter­preting the then-lan­guage of AAA Commercial Arbitration Rule 46).  These cases have been read narrow­ly by other juris­dic­tions, which do not apply AAA Commercial Arbitration Rule 47(a) liter­ally.  See
 
S&R Co. v. Latona Truck­ing, Inc.
, 159 F.3d 80, 85 (2d Cir. 1998); 
Home Gas Corp. of Massa­chu­setts, Inc. v. Walter's of Hadley, Inc.
, 403 Mass. 772, 777-78, 532 N.E.2d 681, 684-85 (1989); 
cf
. 
McMillin Devel­opment, Inc. v. Home Buyers Warranty
, 68 Cal. App. 4th 896, 908, 80 Cal. Rptr. 2d 611, 617 (1998) (interpret­ing identical language in AAA, Home Warran­ty Arbitra­tion Rules, Rule 26(a) (3 Oehmke app. C-2, at 5 (as amended eff. January 1, 1996))).  

The parties cannot, by agreement, frustrate the inher­

ent power of a court to bind litigants to their former actions.  
McMillin
, 68 Cal. App. 4th at 909, 80 Cal. Rptr. 2d at 617-18; 
Home Gas Corp.
, 403 Mass. at 777-78, 532 N.E.2d at 684-85; 
S&R Co.­
, 159 F.3d at 86.  We join those jurisdictions that consider AAA Commercial Arbitration Rule 47(a) as just one factor to be considered in determining if prior partici­pation in litigation amounts to a waiver of the right to arbi­trate.  See 
Knorr Brake Corp. v. Harbil, Inc.
, 556 F. Supp. 489, 493 n.5 (N.D. Ill. 1983); 
Joba Construction Co. v. Monroe County Drain Commissioner
, 150 Mich. App. 173, 179, 388 N.W.2d 251, 254 (1986).

2.  
Earlier
 
Opposition
 
to
 
Arbitration

The subcontractors argue Clark should be bound by statements made in opposing motions by Gibson and Levy to compel arbitration.  The arbitration clause here provides that Clark may stay arbitration while the litigation between itself and State Farm is resolved.  To invoke this right, Clark only has to contend that the subcontractors' disputes are related to the prime contract documents or the actions of State Farm.  This tentative claim does not determine the subcontractors' arbitra­

tion rights for the rest of the suit.  Article 11.c. of the subcontracts explicitly provides the issue of arbitrability may be revisited in the dispute resolution procedures in article 11.b.  In opposing arbitration, Clark argued, in the alternative, that the case had not progressed far enough to determine whether the subcontractors' claims were to be arbitrated.

 3.  
Clark's Conduct in its Suit with State Farm

 A party's conduct amounts to waiver when the party admits an arbitration agreement exists, yet submits issues that are arbitrable under the contract to a court for deci­sion.  
Kennedy v. Commercial Carriers, Inc.
, 258 Ill. App. 3d 939, 943, 630 N.E.2d 1059, 1062 (1994).  The subcontractors rely on the fact Clark delayed as long as 25 months after cross-claims were filed before making an arbitration demand (
Yandell
, 274 Ill. App. 3d at 832, 654 N.E.2d at 1390), and engaged in extensive discov­

ery with the subcontractors (
Epstein v. Yoder
, 72 Ill. App. 3d 966, 972, 391 N.E.2d 432, 437 (1979)).  Because the subcon­tracts allowed Clark to seek a stay of arbitration of the subcon­tract claims while litigating claims with State Farm, Clark did not contradict the arbitration clause by proceeding with litiga­tion against State Farm.  The discovery and delay associated with this litigation cannot be the basis for waiver.  The cross-claims involving the subcontractors and the claims between Clark and State Farm were related.  We cannot determine, on this record, what discovery was necessary to the State Farm litigation.

Clark still waived arbitration of claims against Conte, Concept, Moran, Gibson, Jade, and Levy by filing a motion for summary judgment against them.  See 
Applicolor, Inc. v. Surface Combustion Corp.
, 77 Ill. App. 2d 260, 267, 222 N.E.2d 168, 171 (1966).  This motion was based on express releases obtained from the subcontractors.  These releases were arbitrable because they did not relate to the contract documents or the actions of State Farm.  There was no reason to raise the issue while arbi­tration was stayed.  

F.  Whether the Remaining Cross-Claims are Arbitrable

Where an arbitration clause is ambiguous, the issue of arbitrability must be decided in arbitration.  Where the arbitra­

tion clause is clear, the issue of arbitrability is for the court to decide.  
Donaldson, Lufkin & Jenrette Futures, Inc. v. Barr
, 124 Ill. 2d 435, 447-48, 530 N.E.2d 439, 444-45 (1988).

Clark's remaining cross-claims clearly fall within the subcontracts' exception to arbitration because they relate to the terms of the prime contract.  They alleged the subcontractors failed to perform the subcontract according to the terms of the prime contract to the satisfaction of State Farm.  Clark also sought indemnity from the subcontractors for its liability to State Farm under the prime contract.  

The subcontractors' cross-claims also clearly fall within the exceptions to arbitration.  Clark incorporated its cross-claims against the subcontractors into its affirmative defenses against the subcontractors' cross-claims, arguing breach of the subcontracts and seeking a setoff and recoupment against them.  Therefore, to the extent the Clark cross-claims related to the terms of the prime contract, so did the dispute over the subcontractors' cross-claims.  Clark's answer and affirmative defenses to Egan's cross-claim are not included in the appellate record.  However, Egan sought to hold Clark and State Farm jointly and severally liable for breach of the prime contract and breach of the subcontract.  This argument relates directly to the terms of the prime contract. 

Clark argues arbitration is required by the settlement agreement between it and State Farm.  Clark argues the settlement contract resolved every aspect of these claims falling under article 11.b. and that all that remained is arbitrable under article 11.c.  By eliminating Clark's potential liability to State Farm, the settlement also eliminated Clark's contribution claims against the subcontractors.  However, it did not eliminate Clark's claim the subcontractors breached the subcontract, asserted as both a cross-claim and as a setoff against the subcontractors' cross-claims.  Neither did it eliminate Egan's cross-claim that Clark breached the subcontract.

Clark argues the settlement agreement provided that the exceptions to arbitration no longer apply.  Under article 11.c., State Farm and Clark may determine whether the exceptions to arbitration of subcontractors' claims apply when resolving their disputes under article 11.b.  Under article 11.b., the subcon­

tractors are bound by determinations made in resolving disputes between State Farm and Clark.  Therefore, under the subcontracts, a settlement between Clark and State Farm can provide for arbi­

tration of the remaining disputes.

However, this settlement failed to do so.  Notably, State Farm and Clark did not determine in the settlement that the arbitration exceptions do not apply but, rather, agreed to 
move
 
for
 dismissal because the exceptions do not apply.  The settle­

ment agreement clearly contemplated that the remaining disputes between Clark and the subcontractors might still be litigated.  It stated, in pertinent part:

"7.  State Farm *** will provide reasonable cooperation to Clark in connection with any remaining subcontractor /material supplier claims (
whether
 
in
 
the
 
Lawsuit
 
or
 
in
 
arbitra­

tion
 
proceedings
), including, but not limited to, making available 
for
 
trial/hearings
 and otherwise affording Clark access to [certain documents].  The access described in the preceding sentence shall be exclusive to Clark, 
except
 
as
 
may
 
be
 
required
 
by
 
the
 
dis­

covery
 
rules
 
applicable to
 
the
 
Lawsuit
."  (Emphasis added).

The settlement agreement did not change the effect of the arbi­

tration clause.  These cross-claims may be litigated.

III.  CONCLUSION

For all of the above reasons, we affirm.

Affirmed.

COOK and MYERSCOUGH, JJ., concur.