FIFTH DIVISION

September 29, 2000

 

No. 1-00-0528

LELA BISHOP, BARBARA WINGO, ) Appeal from the

RINDA YEAGER, PAMELA DUTTON, ) Circuit Court of

RAYMOND GREEN, BARBARA GREEN, ) Cook County

KAREN STILLWELL, )

MICHELLE SCHROER, GEORGE HORNBOSTEL, )

and DIXIE HORNBOSTEL, )

) 

Plaintiffs-Appellants and Cross-Appellees, )

)

and ) No. 99-L-00223

)

MICHAEL CASTLEMAN, 
 )

)

Plaintiff and Cross-Appellee, ) 

)

v. ) 

) 

WE CARE HAIR DEVELOPMENT CORPORATION, )

DOCTOR'S ASSOCIATES, INC., FREDERICK )

DELUCA, PETER BUCK, FRANCHISE WORLD ) The Honorable

HEADQUARTERS, INC., JOHN F. AMICO & ) Richard A. Siebel,

COMPANY, JOHN AMICO, SR., FREDERICK ) Judge Presiding

FLORIO, J'AMI
 INTERNATIONAL, INC., and )

FRANCHISE
 REAL ESTATE LEASING )

CORPORATION,
 )

)

Defendants-Appellees and Cross-Appellants. )

JUSTICE GREIMAN delivered the opinion of the court:

A number of individuals, hereinafter franchisees, filed a complaint against franchisor We Care Hair Development Corporation (We Care Hair).  We Care Hair and its affiliates filed motions to compel the franchisees to arbitrate their claims and to stay the proceedings pending arbitration.  The trial court granted the motions as to all franchisees except Michael Castleman.  The remaining franchisees appealed, arguing that (1) We Care Hair waived its right to compel them to arbitrate; and (2) the arbitration clauses are unconscionable, illusory, and violate public policy.  Defendants also appealed, arguing that they did not waive their right to arbitrate with Castleman.

FACTS

On February 4, 1997, a group of We Care Hair franchisees filed a class action lawsuit in Madison County, Illinois circuit court against We Care Hair, Doctor's Associates, Inc. (DAI), Frederick DeLuca, Peter Buck, John Amico, and several others.
(footnote: 1)  The lawsuit alleged that defendants breached their fiduciary duty in the management of the franchise advertising fund; that defendants committed fraud in the franchising and promotion of the franchises; that defendants violated the Illinois Franchise Disclosure Act of 1987 (815 ILCS 705/1 
et seq.
 (West 1996)) and Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 
et seq. 
(West 1996)) in the promotion and marketing of the franchises; and that defendants violated the Illinois anti-trust statute (740 ILCS 10/2, 3 (West 1996)) by engaging in illegal price fixing.  Each franchise agreement contained an arbitration clause, which the defendants asserted as an affirmative defense. 

The plaintiffs filed a motion for partial summary judgment on the issue of the enforceability of the arbitration clause.  On May 15, 1997, the trial court granted the motion after a hearing and entered a judgment under Supreme Court Rule 304(a) (134 Ill. 2d R. 304(a)), finding the arbitration clauses to be illusory, unconscionable, void against public policy, and, therefore, unenforceable.  The trial court also found that the defendants waived their right to compel arbitration under both the Federal Arbitration Act (FAA) (9 U.S.C.A. §1
 et seq. 
(West 1996)) and the Illinois Uniform Arbitration Act (the Act) (710 ILCS 5/1 
et seq. 
(West 1996)).  The trial court subsequently granted the plaintiffs' motion to amend the complaint to add numerous franchisees as plaintiffs, including Michael Castleman, an Illinois franchisee.  On August 29, 1997, the trial court extended its previous arbitration ruling to the new state plaintiffs, certified that ruling for immediate appeal under Rule 304(a), and consolidated the appeal with the May 15, 1997, order.  On July 16, 1997, the trial court denied the defendants' motion to transfer the case to Cook County under the doctrine of 
forum non conveniens
.  The defendants appealed both rulings.  

In the meantime, in April 1997, We Care Hair, an Illinois corporation, filed petitions in the federal District Court for the Northen District of Illinois under section 4 of the FAA (9 U.S.C.A. §4 (West 1996)) to compel arbitration with the 53 non-Illinois franchisees and to enjoin the state court proceeding pending the completion of arbitration.
(footnote: 2)  The petitions were consolidated into one case.  The remaining 11 Illinois franchisees were not included in the federal action. 

On September 25, 1997, the federal district court found the arbitration clauses to be enforceable and entered an order compelling the 53 defendant franchisees to arbitrate their claims against We Care Hair, enjoining them from proceeding in the Madison County lawsuit, and ordering them to withdraw from the appeals that were pending before the Illinois Appellate Court.  The district court's decision was affirmed on June 11, 1999.  See 
We Care Hair Development, Inc. v. Engen
, 180 F.3d 838 (7th
 Cir. 1999).  The Seventh Circuit determined that the Madison County judgments would not be given preclusive effect under Illinois law since the order holding the arbitration clauses void and unenforceable was not a final order; that the arbitration clauses were valid and enforceable under Illinois law; and that the district court did not abuse its discretion in enjoining the franchisees from proceeding in the state court lawsuit.  
Enge
n, 180 F.3d at 842-44.

We Care Hair's consolidated appeals of the Madison County circuit court's rulings proceeded only as to the 11 Illinois franchisees.  On March 9, 1998, the Fifth District Appellate Court ruled that the trial court abused its discretion when it denied defendants' motion to transfer under the doctrine of 
forum non conveniens
 and ordered the trial court to transfer the cause to Cook County.  On May 1, 1998, the Fifth District Appellate Court dismissed the appeals concerning the arbitration issue after finding that the partial summary judgment rulings were not final and appealable despite the Rule 304(a) language.  The appellate court found that while the trial court order struck one of the affirmative defenses, it did not dispose of any cause of action in the franchisees' complaint. 

On July 21, 1999, defendants filed a motion in Cook County to stay the action pending the arbitrations.  On September 14, 1999, We Care Hair filed an application to compel arbitration.  No evidentiary hearing was held.  On February 4, 2000, the trial court ordered all of the Illinois franchisees except Castleman to arbitrate.  The trial court found that defendants waived their right to arbitrate with Castleman because of a prior eviction action filed against him by We Care Hair Realty, the leasing company of We Care Hair.  The trial court also found that defendants did not waive their right to arbitrate with the other Illinois franchises by prosecuting the 
forum non conveniens
 appeal.  The trial court rejected the franchisees' mutuality, public policy, and unconscionability defenses.  Accordingly, the trial court stayed all proceedings.

All the plaintiffs except Castleman appealed the trial court's rulings.  Defendants appealed the ruling that they waived their right to arbitrate with Castleman.  We note that while defendants' notice of appeal is entitled a "cross-appeal," this is technically incorrect since Castleman did not file an appeal.

DAI is a Florida corporation owned by DeLuca and Buck.  DAI is the franchisor of Subway sandwich shops.  DAI and Amico own We Care Hair, the national franchisor of the We Care Hair salons.  The franchise agreements are apparently not identical, as the franchisees signed agreements with We Care Hair over the course of many years.  However, they all contain an arbitration clause. Some of the agreements contain the following arbitration clause:

"Any dispute or claim arising out of or relating to this Agreement not settled by the parties according to the mediation procedures set out in [the agreement], shall be settled in accordance with the Commercial Arbitration Rules of the American Arbitration Association at a hearing to be held in Chicago, Illinois. *** The commencement of mediation and then arbitration proceedings by an aggrieved party to settle any such dispute is a condition precedent to the commencement of legal action by either party, except as specifically provided in this Agreement."

The rest of the agreements contain a slightly different arbitration clause:

"Any controversy or claim arising out of or relating to this Agreement or the breach thereof shall be settled by arbitration in accordance with Illinois law and the procedure set forth in the Commercial Arbitration Rules of the American Arbitration Association at a hearing to be held at the office of the American Arbitration Association in Chicago, Illinois or whichever city in which the Company is then headquartered ***. The commencement of arbitration proceedings by an aggrieved party to settle disputes arising out of or relating to this Agreement is a condition precedent to the commencement of legal action by either party."

The franchise agreements all provide that they "shall be governed by and construed in accordance with the laws of the State of Illinois." 

All of the franchisees were required to sign a sublease agreement with We Care Hair Realty.  Although the subleases do not contain an arbitration clause, they do contain the following "cross-

default" provision:

"The Sublessee shall use the premises only to operate a We Care Hair hair salon under the terms of his Franchise Agreement with We Care Hair Development Inc. *** If at any time during the term of this Sublease, Sublessee shall default in the performance of any of the terms of this Sublease or the Master Lease or the Franchise Agreement, the Sublessor, at its option, may terminate this sublease on ten (10) days written notice to Sublessee; and upon such termination, Sublessee shall quit and surrender the leased premises to the Sublessor ***."

Thus, every breach of the franchise agreement is a breach of the sublease.  Under the sublease, We Care Hair Realty could file an eviction lawsuit against a franchisee for any breach of the sublease.

The uniform franchise offering circular provided by We Care Hair to the franchisees apparently included a standard franchise agreement and sublease.  The circular provides that "the provisions in the Franchise Agreement concerning *** arbitration *** do not apply to [the] Sublease."  The circular also provided that We Care Hair Realty could terminate a sublease without We Care Hair also terminating the franchise agreement, and that such a situation could render the franchise agreement valueless.

ANALYSIS

Supreme Court Rule 307(a)(1) (134 Ill. 2d R. 307(a)) provides that a party can appeal an interlocutory order granting, modifying, refusing, dissolving, or refusing to dissolve or modify an injunction.  A motion to compel arbitration is analogous to a motion for injunctive relief.  
Amalgamated Transit Union, Local 900 v. Suburban Bus. Division of the Regional Transportation Authority
, 262 Ill. App. 3d 334 (1994). 
Where an interlocutory appeal is brought pursuant to Rule 307(a)(1), controverted facts or the merits of the case are not decided.  
Yates v. Doctor's Associates, Inc.
, 193 Ill. App. 3d 431 (
1990).  The only issue before the court on interlocutory appeal of a trial court's order granting a motion to compel arbitration is whether there is a sufficient showing to sustain the trial court's order.  
Amalgamated
, 262 Ill. App. 3d at 337; 
Barter Exchange, Inc. v. Barter Exchange, Inc.
, 238 Ill. App. 3d 187 (
1992).  Thus, the standard of review in an interlocutory appeal generally is whether the trial court abused its discretion in granting or denying the requested relief.  See 
Zurich Insurance Co. v. Raymark Industries, Inc.
, 213 Ill. App. 3d 591 (
1991); 
Disciplined Investment Advisors, Inc. v. Schweihs
, 272 Ill. App. 3d 681 (
1995).  

This case involves issues that have been litigated repeatedly in numerous state and federal courts between DAI and its Subway franchisees.  Initially, the parties dispute whether the procedural provisions of the FAA or the Act apply.  Defendants based their motion to stay the proceedings under section 3 of the FAA, which permits any party to the arbitration agreement to seek a stay of a lawsuit "brought in any of the courts of the United States" if it involves issues subject to the agreement.  9 U.S.C.A. §3 (West 1996).  We Care Hair based its motion to compel under section 2 of the Act, which provides in pertinent part:

"(a) On application of a party showing an agreement described in Section 1, and the opposing party's refusal to arbitrate, the court shall order the parties to proceed with arbitration ***.

***

(d) Any action or proceeding involving an issue subject to arbitration shall be stayed if an order for arbitration or an application therefor has been made under this Section ***.  When the application is made in such action or proceeding, the order for arbitration shall include such stay."  710 ILCS 5/2 (West 1996).

Therefore, plaintiffs’ argument that section 3 of the FAA does not apply in state court is irrelevant because defendants’ motion to compel permitted the trial court to order a stay.

Plaintiffs first assert that Illinois law, rather than federal law, applies to the issue of waiver.  Normally, the FAA would apply because the franchise agreement involves interstate commerce. 
 
See 9 U.S.C.A. §2 (West 1996).  Where a contract involving interstate commerce contains an arbitration clause, federal law preempts state statutes even in state courts.  
Allied-Bruce Terminix Cos. v. Dobson
, 513 U.S. 265, 130 L. Ed. 2d 753, 115 S. Ct. 834 (1995); 
Southland Corp. v. Keating
, 465 U.S. 1, 79 L. Ed. 2d 1, 104 S. Ct. 852 (1984); 
Konewko v. Kidder, Peabody & Co.
, 173 Ill. App. 3d 939 (1988).  However, plaintiffs argue that the Act applies because the franchise agreements select the law of Illinois.  

In 
Volt Information Sciences, Inc. v. Board of Trustees of the Leland Stanford Junior University
, 489 U.S. 468, 103 L. Ed. 2d 488, 109 S. Ct. 1248 (1989), a university sued a contractor for fraud and breach of contract.  The construction contract contained separate arbitration and choice of law provisions.  The trial court denied the contractor's motion to compel and granted the university's motion to stay arbitration.  The appellate court, in affirming, held that the choice of law provision in the contract incorporated California arbitration rules into the arbitration agreement.  The California rules required a stay of arbitration that would not have been required under federal law.  The United States Supreme Court held that enforcing state rules of arbitration is consistent with the goals of the FAA when the parties have specified by contract that these rules should apply even if the result is that arbitration is stayed where the FAA would otherwise permit it to go forward.  489 U.S. at 479, 103 L. Ed. 2d at 500, 109 S. Ct. at 1256.  The Court reasoned that, just as parties can limit by contract which issues they will arbitrate, they can also specify the rules under which they will arbitrate.  489 U.S. at 479, 103 L. Ed. 2d at 500, 109 S. Ct. at 1256.

In 
Yates
, the court, in 
dicta
, rejected the defendants' argument that the FAA preempted Illinois law because the franchise agreements involved interstate commerce.  The court noted that the agreements contained a choice of law provision and found that "[t]here is nothing in the record before us to suggest that this provision was not intended to be fully applicable to the arbitration clause in the franchise agreements."  
Yates
, 193 Ill. App. 3d at 43.  See also 
Ryan v. Kontrick
, 304 Ill. App. 3d 852 (1999) (finding that the parties incorporated a separate choice of law provision into the arbitration provision).

In 
Mastrobuono v. Shearson Lehman Hutton, Inc.
, 514 U.S. 52, 131 L. Ed. 2d 76, 115 S. Ct. 121, (1995),
 a contract between a securities brokerage firm and two customers specifically provided that claims for punitive damages would be arbitrated.  The contract also contained a general choice of law provision stating that New York law would apply.  New York law prohibited arbitrators from awarding punitive damages.  The United States Supreme Court held that the contract permitted an arbitration panel to award punitive damages.  514 U.S. at 64, 131 L. Ed. 2d at 88, 115 S. Ct. at 1219.  The Court construed the ambiguity against the brokerage firm and relied on the presumption in the FAA that all doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.  The Court reasoned that the choice of law provision covered the rights and duties of the parties while the arbitration clause covered arbitration.  514 U.S. at 64, 131 L. Ed. 2d at 88, 115 S. Ct. at 1219.

State Farm Mutual Automobile Insurance Co. v. George Hyman Construction Co.
, 306 Ill. App. 3d 874 (1999), distinguished 
Mastrobuono
 by noting that it turned on deference to the state court's construction of the choice of law provision.  Accordingly, the court found that it had authority under 
Volt
 to hold that the general choice of law provision extended to the arbitration clause.  
State Farm Mutual
, 306 Ill. App. 3d at 881.  
Cf. 
Paul Davis Systems of Northern Illinois, Inc. v. Paul W. Davis Systems, Inc.
, No. 98 C 2027 (N.D. Ill. October 15, 1998) (finding that pursuant to 
Mastrobuono
, franchise agreement required application of federal law notwithstanding choice of law provision
).  
Not only do the franchise agreements in the instant case contain a choice of law clause, but many of the agreements incorporate it into the arbitration provision.  Therefore, we find that the choice of law clauses reflect an agreement by the parties to arbitrate in accordance with Illinois law.

There is a presumption in Illinois law against waiver.  
Jacobs v. C & M Video, Inc.
, 248 Ill. App. 3d 654 (1993); 
First Condominium Development Co. v. Apex Construction & Engineering Corp.
, 126 Ill. App. 3d 843 (1984); 
Brennan v. Kenwick
, 97 Ill. App. 3d 1040 (1981).  However, a contractual right to arbitrate can be waived as with any other contract right.  
Ure v. Wangler Construction Co.
, 232 Ill. App. 3d 492 (1992).  Illinois courts will find waiver when a party's conduct is inconsistent with the arbitration clause, thus indicating an abandonment of the right to arbitration.  
Burnett v. Safeco Insurance Co.
, 227 Ill. App. 3d 167 (1992).  Specifically, a party waives its right to arbitrate by submitting arbitrable issues to a court for decision.  
Kostakos v. KSN Joint Venture No. 1
, 142 Ill. App. 3d 533 (
1986).  Illinois courts also consider the delay in a party's assertion of its right to arbitrate and any prejudice the delay caused the plaintiff.  See 
Kostakos
, 142 Ill. App. 3d at 537. 

Plaintiffs assert that defendants waived their right to arbitration by requesting a change of venue for purposes of class certification and by failing to demand arbitration for more than two years.  Plaintiffs contend that such conduct is inconsistent with enforcement of the arbitration clauses.  Filing a motion for summary judgment on an arbitrable issue has been found to constitute waiver.  
Applicolor, Inc. v. Surface Combustion Corp.
, 77 Ill. App. 2d 260 (1966).  Filing an answer without asserting the right to arbitrate also constitutes waiver.  
Gateway Drywall & Decorating, Inc. v. Village Construction Co.
, 76 Ill. App. 3d 812 (1979).  Contesting venue, however, does not constitute waiver.   
Brennan
, 97 Ill. App. 3d at 1043 (noting that an objection to venue must be asserted in the earliest defensive pleading or waiver will result).  See also 
Kennedy v. Commercial Carriers, Inc.
, 258 Ill. App. 3d 939 (1994) (attempt to remove case to federal court on the basis of preemption by a federal labor law did not constitute conduct demonstrating intent to abandon right to arbitrate).  There is no case holding that raising the possibility of a class action suit in arguing for a change of venue constitutes waiver of the right to arbitrate.  Moreover, nothing in the record establishes that class certification formed the basis of defendants' venue motion.  We note also that defendants did not engage in any discovery during the two-year delay.  See 
Kostako
s, 142 Ill. App. 3d at 536-37.  Therefore, we find that defendants did not submit any substantive questions to the trial court for determination or demonstrate an intent to proceed to the exclusion of arbitration by filing its venue motion.

Nor do we find that the delay alone establishes waiver.  In 
Kostakos
, the defendant delayed 15 months in filing an answer setting up the arbitration clause in the parties' agreement as an affirmative defense.  The defendant waited another eight months before filing a motion to compel arbitration and stay all other proceedings.  However, the court found that the plaintiff contributed to the delay by waiting several months to attach a copy of the parties' agreement to the complaint and file an amended complaint.  
Kostakos
, 142 Ill. App. 3d at 537.  Thus, the court held that the trial court did not abuse its discretion in finding that the delay caused by defendants did not constitute a waiver of the right to arbitrate.  
Kostakos
, 142 Ill. App. 3d at 537.  See also 
City of Centralia v. Natkin & Co.
, 257 Ill. App. 3d 993 (1994) (refusing to find waiver where the defendant filed for arbitration after the city had filed its complaint in state court).  Here, plaintiffs did nothing to address the issue of arbitration, even though raised by defendants in their affirmative defense, until defendants filed their motion to compel.  The affirmative defense incorrectly asserted that a motion to stay had been filed in federal court against all plaintiffs; however, the 11 Illinois franchisees were on notice that defendants would raise the issue of arbitration.  Notably, plaintiffs do not contend that they were prejudiced by defendants' conduct.  In any event, we find that no prejudice resulted from defendants' delay in moving for arbitration.    

Yandell v. Church Mutual Insurance Co.
, 274 Ill. App. 3d 828 (1995), is distinguishable.  In 
Yandell
, the defendant-insurer did not assert its arbitration rights until more than eight months after the plaintiff filed its underinsured motorist claim, two years after the plaintiff notified the defendant of his claim, and 2-1/2 years after the date of the accident. However, the arbitration provision in the parties' agreement provided that arbitration was not required unless the insurer or insured made a written demand for arbitration.  The court noted that the defendant never made a written arbitration demand on the plaintiff.  Also, case law required an insurer to make its demand within a reasonable time.  Accordingly, the court held that the trial court could have reasonably concluded that the defendant chose not to assert its arbitration rights by failing to assert them in a reasonable time.  274 Ill. App. 3d at 832.  Here, the arbitration clauses do not expressly limit the time in which a demand for arbitration must be made.  

We note that the franchise agreements provide that arbitration shall be set in accordance with the Commercial Arbitration Rules of the American Arbitration Association (AAA).  Rule 1 provides "[t]he parties shall be deemed to have made these rules a part of their arbitration agreement whenever they have provided for arbitration by the [AAA] or under its Commercial Arbitration Rules."  Martindate-Hubbell Dispute Resolution Directory 6-27 (1996).  Rule 47(a) provides that "[n]o judicial proceeding by a party relating to the subject matter of the arbitration shall be deemed a waiver of the party's right to arbitrate."  Martindate-Hubbell Dispute Resolution Directory 6-30 (1996).

In 
State Farm Mutual
, where the subcontracts incorporated the "no waiver" provision of Rule 47(a), the court determined that the rule is just one factor that should be considered in determining whether a party has waived its right to arbitration.  
State Farm Mutual
, 306 Ill. App. 3d at 884.  In 
Atlas v. 7101 Partnership
, 109 Ill. App. 3d 236 (1982), the court found that the plaintiff did not waive his right to arbitrate even though he had filed a complaint, an amended complaint, and two motions for preliminary injunctions.  The court noted that the agreement incorporated the AAA rules into the arbitration clause and that the plaintiff's conduct was not inconsistent with Rule 47(a).  
Atlas
, 109 Ill. App. 3d at 241.  Similarly, the 
Kostakos
 court found that "[t]he inclusion of rule 47 indicates the parties' intention to favor arbitration ***."  
Kostakos
, 142 Ill. App. 3d at 538.  But see 
Yates
, 193 Ill. App. 3d at 440-41 (refusing to take judicial notice of the Commercial Arbitration Rules of the AAA).  We find that inclusion of Rule 47(a) indicates the parties' intent to arbitrate.

Plaintiffs next assert that We Care Hair acted inconsistently with its right to arbitrate by filing an eviction lawsuit against Castleman in the name of its alter ego leasing company, We Care Hair Realty.  Plaintiffs contend that only We Care Hair has standing to appeal the portion of the trial court's order finding that defendants waived their right to compel Castleman to arbitrate.  We agree.  Only signatories to an arbitration agreement can file a motion to compel arbitration.  See 
Vukusich v. Comprehensive Accounting Corp.
, 150 Ill. App. 3d 634 (1986).  We Care Hair was the only party to the franchise agreement with Castleman and the only defendant to file an application to compel.  Therefore, the trial court erred in finding that defendants waived their right as to Castleman.

Plaintiffs further contend that the sublease and franchise agreements should be construed as a single contract and that the eviction proceeding is interrelated with Castleman’s state law claims.

We find 
Doctor’s Associates, Inc. v. Distajo
, 107 F.3d 126 (2d Cir. 1997)
, to be persuasive.  In 
Distajo
, several disputes arose between DAI and its Subway franchisees regarding rents, royalties, and advertising fees due under the franchise agreements and subleases.  DAI’s leasing companies filed eviction actions against some of the franchisees.  Several months later, the franchisees filed lawsuits alleging fraud, breach of contract, and violations of various Illinois statutes.  On remand, the district court granted DAI’s petitions to compel, finding that DAI had not waived its right to arbitrate by bringing eviction proceedings because it did not engage in litigation on the merits of the issues raised in the state suits.  The parties agreed that the eviction actions were premised partly on violations of the franchise agreements.  The court affirmed, having been persuaded by DAI’s argument that “[t]here is no conceivable policy justification for a rule that, by exercising the reasonable business judgment to sue to evict someone from leased premises or to collect a debt of less than $10,000, a party waives for all time its right to arbitrate every other dispute imaginable, including *** claims of which the party has no knowledge when it files the eviction action."  
Distajo
, 107 F.3d at 132-33.  See also 
Gingiss International, Inc. v. Bormet
, 58 F.3d 328 (7th
 Cir. 1995) (franchisor did not waive right to arbitrate because claims filed by franchisees and leasing company's unlawful detainer action involved different issues).

Here, the record establishes that the forcible entry and detainer complaint alleged that Castleman defaulted under the sublease because he did not pay rent and violated the use clause of the sublease.  The claims in the eviction lawsuit were completely unrelated to Castleman’s state law claims.  Issues surrounding rental payments are different from issues that arise under the franchise agreement.  The eviction lawsuit did not rely on a breach of the franchise agreement.  As a result, unpaid rent due under the sublease is a nonarbitrable issue.  The trial court erred in finding that We Care Hair waived its right to arbitrate with Castleman.  We reject plaintiffs' argument that We Care Hair Realty's actions can be imputed to We Care Hair because the leasing company is an alter ego of the franchisor.  The two entities are different companies with different purposes, even if one may "control" the other.  In any event, there is no evidence in the record to support such a finding.

Yates
 is distinguishable.  The franchisees filed a complaint against DAI and others alleging, 
inter alia
, fraudulent misrepresentation, breach of contract, and violations of the Illinois Franchise Disclosure Act.  While DAI's motion to compel arbitration was pending, the leasing company filed forcible entry and detainer actions against the franchisees.  The franchisors alleged that the franchisees had refused to make royalty payments as required by the franchise agreements.  The franchisees claimed that they refused to make the payments because they believed that the franchisors’ conduct in refusing to approve their proposed locations constituted a breach of the franchise agreements.  The court found that the franchisors submitted arbitrable issues for judicial determination because the forcible entry and detainer actions arose from the same dispute as the lawsuit filed by the franchisees.  
Yates
, 193 Ill. App. 3d at 437.  Accordingly, the court held that the franchisors had waived their right to arbitrate. 
 
Yates
, 193 Ill. App. 3d at 437.  We Care Hair Realty, unlike the leasing company in 
Yates
, filed the eviction lawsuit well 
before
 the franchisees filed their lawsuit.  

Plaintiffs next assert that the arbitration clauses and the cross-default clauses are unconscionable, illusory, and against public policy because they act as penalty clauses, require multiple actions in multiple forums, and are contrary to the Illinois Franchise Disclosure Act.  Contrary to plaintiffs' contention, the Madison County judgments finding the arbitration clauses to be void and unenforceable are not still part of the case.  Those rulings are not entitled to any deference and in fact are void.  
Engen
 
rejected plaintiffs' argument on the basis that the Madison County judgments would not be given preclusive effect under Illinois law.  
Engen
, 180 F.3d at 842. The fifth district appellate court subsequently found that the Madison County's order holding the arbitration clauses void and unenforceable was not a final order.  Therefore, 
res judicata
 does not apply and we can apply our own analysis as to the validity of the arbitration clauses.  We find that the trial court did not abuse its discretion in upholding the arbitration clauses.   

Section 1 of the Act provides that a provision in a written contract to submit any controversy between the parties to arbitration is valid, enforceable and irrevocable "save upon such grounds as exist for the revocation of any contract."  710 ILCS 5/1 (West 1996).  Similarly, section 2 of the FAA provides that a written agreement to arbitrate in any contract involving interstate commerce or a maritime transaction "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C.A. §2 (West 1996).  "In determining whether a valid arbitration agreement arose between the parties, a federal court should look to the state law that ordinarily governs the formation of contracts."  
Gibson v. Neighborhood Health Clinics, Inc.
, 121 F.3d 1126, 1130 (7th
 Cir. 1997).  State contract defenses may be applied to invalidate arbitration clauses if those defenses apply to contracts generally.  
Doctor's Associates, Inc. v. Casarotto
, 517 U.S. 681, 134 L. Ed. 2d 902, 116 S. Ct. 1652 (1996).  Illinois law clearly applies to plaintiffs' contract defenses.

We reject plaintiffs’ argument that the arbitration clauses and cross-default clauses are both procedurally and substantively unconscionable.  The doctrine of unconscionability is designed to prevent overreaching at the contract-formation stage.  Procedural unconscionability involves impropriety during the process of forming a contract that deprives a party of a meaningful choice, while substantive unconscionability relates to situations where a clause or term in a contract is allegedly one-sided or overly harsh.  
Frank's Maintenance & Engineering, Inc. v. C.A. Roberts Co.
, 86 Ill. App. 3d 980 (1980).  Plaintiffs do not allege that they did not have the opportunity to review the franchise agreement before signing it.  In fact, each franchisee was provided with a copy of the offering circular, which clearly provided that We Care Hair Realty could bring an eviction action for any breach of the sublease or franchise agreement.  Plaintiffs concede the offering circular stated that the arbitration clause did not apply to the sublease.  There is no evidence in the record that the franchisees are "working people of modest means."  In any event, such a finding would be irrelevant unless it was also shown that they were vulnerable or helpless.  See 
Engen
, 180 F.3d at 843.  Plaintiffs do not allege that We Care Hair took advantage of their ignorance during the franchise negotiations.  See 
Original Great American Chocolate Chip Cookie Co. v. River Valley Cookies, Ltd.
, 970 F.2d 273 (7th
 Cir. 1992) (applying Illinois law).  There is no evidence in the record that the franchisees were unfairly surprised or oppressed by We Care Hair's eviction proceeding, as the sublease clearly provided for such action.  See 
Doctor's Associates, Inc. v. Jabush
, 89 F.3d 109 (2d Cir. 1996) (applying Illinois law). 

We also reject plaintiffs’ argument that We Care Hair fraudulently induced them to accept the arbitration clause.  Plaintiffs claim that the offering circular did not advise them that We Care Hair controls the franchisees by instructing We Care Hair Realty to file eviction proceedings or that We Care Hair could avoid its arbitration obligation.  Plaintiffs have waived this argument by failing to raise it below.  In any event, the alleged misrepresentations are clearly stated in the documents provided to the franchisees before they signed the franchise agreements and subleases. 

Citing 
Grossinger Motor Corp. v. American National Bank
, 240 Ill. App. 3d 737 (1992), plaintiffs argue that the clauses
 violate Illinois public policy by subjecting the franchisee to the risk of eviction and the loss of his investment for any dispute that arises under, or relates to, the franchise.  
Grossinger
, however, is inapplicable.  The 
Grossinger
 court examined a liquidated damages provision that gave the seller the option of seeking actual damages or retaining the earnest money as liquidated damages.  The court held that the provision was unenforceable because the seller would invoke the liquidated damages option as a penalty only if it exceeded actual damages.  
Grossinger
, 240 Ill. App. 3d at 752.  Such a situation does not exist here.

Plaintiffs rely on 
Fireman's Fund Insurance Cos. v. Bugailiskis
, 278 Ill. App. 3d 19 (1996), for the proposition that the clauses conflict with the goal of arbitration, which is to provide efficient and cost-effective procedures for resolving disputes.  In 
Fireman's Fund
, the court considered a non-

binding arbitration clause which allowed the parties to demand a trial following arbitration in certain instances.  The court found the clause unenforceable in that it fostered multiple hearings in multiple forums.  
Fireman's Fund
, 278 Ill. App. 3d at 22-23.  As noted in 
Engen
, 
Fireman's Fund
 is inapposite to the instant case because the arbitration clauses do not contain a similar provision.  

In 
Board of Managers of the Courtyards at the Woodlands Condominium Association v. Iko Chicago, Inc.
, 183 Ill. 2d 66 (1998), the court considered section 1 of the Act and held that where a valid arbitration agreement exists, a court must compel arbitration, even when the principal litigation involves parties that are not signatories to the agreement.  See also 
Moses H. Cone Memorial Hospital v. Mercury Construction Corp.
, 460 U.S. 1, 20, 74 L. Ed. 2d 765, 782, 103 S. Ct. 927, 939 (1983) (holding that the FAA requires piecemeal resolution when necessary to give effect to an arbitration agreement and mandates enforcement of an arbitration agreement despite the presence of persons who are parties to the underlying dispute but not the arbitration agreement).  In 
Galt v. Libbey-Owens-Ford Glass Co.
, 376 F.2d 711 (7th
 Cir. 1967), the court considered section 2 of the Act and found that it was not equitable to enjoin arbitration to prevent multiplicity of actions.  

Next, plaintiffs assert that the clauses are illusory because they allow We Care Hair to use its leasing company to litigate its claims under the franchise agreements through eviction actions filed under the cross-default clause but require the franchisees to arbitrate their disputes.  Plaintiffs cite 
Hull v. Norcom, Inc.
, 750 F.2d 1547 (11th Cir. 1985), for the proposition that an arbitration agreement is not mutually binding where one party reserves the option to raise and resolve the majority of disputes in a court rather than through arbitration.  However, 
Hull
 held that a mutual agreement to arbitrate was effectively abrogated by provisions granting one party a unilateral right to a judicial forum in the event of a breach of the agreement.  
Hull
, 750 F.2d at 1550.  
Moreover, 
Hull
 cannot be reconciled with Illinois law.  The Restatement (Second) of Contracts §79 provides that mutuality of obligation is not essential if the requirement of consideration has been met.  Restatement (Second) of Contracts, §79 (1981).  See also 
Jacob v. C & M Video
, 248 Ill. App. 3d 654 (1993) (implicitly rejected the holding in 
Hull
).  

The franchise agreements in the instant case were supported by consideration.  Consideration is defined as the bargained-for exchange of promises or performances, and may consist of a promise, an act or a forbearance.  Restatement (Second) of Contracts §71 (1981).  
Design Benefit Plans, Inc. v. Enright
, 940 F. Supp. 200 (N.D. Ill. 1996), held that the Illinois Supreme Court would not invalidate an arbitration clause that compels one party to submit all disputes to arbitration but allows the other party the choice of pursuing arbitration or litigation so long as the contract is otherwise supported by consideration on both sides.  See also 
S. J. Groves & Sons Co. v. State
, 93 Ill. 2d 397 (1982), 
overruled on other grounds by
 
Rosetti Contracting Co. v. Court of Claims
, 109 Ill. 2d 72 (1985).  Thus, a mutual promise to arbitrate is sufficient consideration to support an agreement to arbitrate.  Here, the franchise agreements provide that both the franchisee and We Care Hair must arbitrate any dispute arising out of or relating to the franchise agreement.  The fact that the parties agreed to allow We Care Hair to litigate any breach of the sublease is not itself fatal since parties do not have to agree to identical obligations. 

Finally, plaintiffs assert that the clauses deny them the protection of the Franchise Disclosure Act.  The purpose of the statute is to (1) provide franchisees with the necessary information to make an intelligent decision regarding the purchase of a franchise; and (2) protect franchisees and franchisors by providing a better understanding of their business and legal relationship.  815 ILCS 705/2(2) (West 1998).  Section 41 provides:

"Any condition, stipulation, or provision purporting to bind any person acquiring any franchise to waive compliance with any provision of this Act or any other law of this State is void.  This Section shall not prevent any person from entering into a settlement agreement or executing a general release regarding a potential or actual lawsuit filed under any of the provisions of this Act, nor shall it prevent the arbitration of any claim pursuant to the provisions of Title 9 of the United States Code."  815 ILCS 705/41 (West 1998).

Plaintiffs do not contend that the Franchise Disclosure Act precludes enforcement of arbitration contracts.  Instead, they maintain that other methods of dispute resolution contained in the franchise agreements violate its waiver provision.  This argument fails as well.  
Prima Paint Corp. v. Flood & Conklin Manufacturing Co.
, 388 U.S. 395, 18 L. Ed. 2d 1270, 87 S. Ct. 1801 (1967), held that once an arbitration clause is found to be enforceable, the enforceability of any other contract term is for the arbitrator to decide.  We note that 
C & M Video
 rejected a similar public policy argument made by franchisees, noting that “the Act itself recognizes arbitration as a tool in resolving franchise disputes.”  
C & M Video
, 248 Ill. App. 3d at 661.

We decline to address plaintiffs’ remaining arguments.

For the foregoing reasons, we reverse the trial court’s ruling that defendants waived their right to arbitrate with Castleman and affirm the trial court’s ruling that defendants did not waive their right to arbitrate with the other plaintiffs.  We also affirm the trial court's order staying the proceedings.

Affirmed in part; reversed in part. 

QUINN, P.J., and THEIS, J. concur. 

FOOTNOTES
1: 
The Barbers, Hairstyling for Men and Women, Inc.,
 settled with plaintiffs in August 1999.  

2: 
The FAA requires diversity of citizenship or some other independent basis for federal question jurisdiction.  
We Care Hair Development, Inc. v. Engen
, 180 F.3d 838 (7th
 Cir. 1999).