SIXTH DIVISION
April 8, 2011

No. 1-09-2498

| | | |
|---|---|---|
| ILLINOIS BETA CHAPTER OF SIGMA PHI EPSILON FRATERNITY ALUMNI BOARD, | ) ) ) | Appeal from the Circuit Court of Cook County |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 09 CH 28288 |
| ILLINOIS INSTITUTE OF TECHNOLOGY, | ) ) ) | Honorable Dorothy Kirie Kinnaird, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE CAHILL delivered the judgment of the court, with opinion.
Justices J. Gordon and McBride concurred in the judgment and opinion.

**O P I N I O N**

Defendant Illinois Institute of Technology (defendant or Institute) appeals a preliminary injunction in favor of plaintiff Illinois Beta Chapter of Sigma Phi Epsilon Fraternity Alumni Board (plaintiff or fraternity), barring defendant from implementing a new housing policy. This policy would require first-semester students who breach their residence hall contracts and move into a fraternity or sorority house to fulfill 100% of their obligation to the residence hall. Defendant previously allowed first-semester students to move into Greek housing with no or a minimal penalty. We believe plaintiff failed to establish the elements necessary for a preliminary injunction and reverse the judgment of the circuit court.

In early 2009, defendant began developing a policy known as the "Greek Move Policy." Defendant held a series of meetings with fraternities and sororities, including plaintiff, who provided feedback and suggestions. Defendant finalized the policy and planned to implement it for the 2009-10 academic year. The policy provided, among other things, that first-semester students who pledged a fraternity or sorority in the first week of classes would not be freely released from their residence hall contracts if they chose to move into Greek housing. Students who wished to move into Greek housing in the second semester would be freely released from their contracts. Defendant requires incoming first-semester students to either sign a residence hall contract or live at home if they are within commuting distance.

Plaintiff sought declaratory and injunctive relief, alleging it would suffer irreparable harm if the new policy were enforced. Plaintiff alleged that under an agreement between plaintiff and defendant in 1964, plaintiff had the right to designate first-semester students to live in the fraternity house and the new policy would violate this right. Section 13 of the 1964 agreement states: "[T]he Institute will not unreasonably refuse so to assign [to the fraternity house] any men students in good standing regularly enrolled in a department or departments of the Institute who shall be so designated by the [fraternity]." Plaintiff argued the new policy constituted an unreasonable refusal by defendant to assign designated students to the fraternity house. Plaintiff sought, among other things, a declaration that the 1964 agreement remained in effect and preliminary and permanent injunctions, compelling defendant to allow first-semester students to live in the fraternity house.

The trial court heard arguments and testimony August 25, 2009. "Bid day," in which

students accepted offers from fraternities and sororities, was on or about September 5, 2009.

Joshua James, a junior and a member of the fraternity, testified for plaintiff. James said that when he was an incoming freshman in 2007-08, he moved into an assigned dormitory and was required to go through "rush week" during the first week of classes. James accepted a "bid" to live in plaintiff's fraternity house and moved the next weekend. He testified to the inconvenience of this arrangement. James described the academic benefits of living in the fraternity house and participating in the fraternity's positive "balanced man," "sound mind," and community service programs. James described the fraternity's bonding programs and opined that his bonds were stronger with fraternity members who lived in the house than with members who lived outside the house. On cross-examination, James said the fraternity does not require students to live in the house and he admitted that the beneficial programs were available to members who did not live in the house. James said that as of the date of the hearing on August 25, 2009, no incoming freshmen had yet pledged a fraternity or elected to live in a fraternity house.

William Lowden, a representative of plaintiff's alumni board, testified to the academic and social benefits of fraternity membership. Lowden admitted on cross-examination that members living outside the house can participate in the fraternity programs.

Phillip Vittore, a 1954 pledge, said he was involved in drafting the 1964 agreement. Vittore estimated the new housing policy would cause the fraternity to lose 15 to 20 incoming freshmen and $140,000 from its operating budget. He said the new policy will "destroy us." Vittore said on cross-examination that members are not required to live in the house but having fewer than 40 residents leads to financial "bleeding from the arteries."

3

Defendant moved for a directed verdict, arguing plaintiff failed to establish a *prima facie* case for an injunction. Defendant further argued the cause was not ripe because there was no evidence that defendant had withheld student designations to move into fraternity houses. Defendant maintained plaintiff's evidence was insufficient because its witnesses all had lived in the fraternity house and its failure to call a member who did not live in the house defeated the argument that irreparable harm occurs if a member does not live in the house. The trial court denied defendant's motion for a directed finding.

Dr. Alan Cramb, the Institute's provost and senior vice-president for academic affairs, testified for defendant. Dr. Cramb said that under the new housing policy, defendant will not waive the financial obligation of a student who moves into a fraternity house in the fall semester after signing a housing contract. Students who decide in the fall to move to a fraternity house in the spring may do so without penalty. Dr. Cramb confirmed that "rush" had not yet occurred for 2009-10 and would take place around September 5, 2009. Dr. Cramb said the Institute plans to enforce all housing contracts, not just the contracts of incoming freshmen who move to fraternity houses. Dr. Cramb said the change was made for financial reasons, including losses in the endowment. Defendant was losing significant revenue when students moved after signing a contract and defendant could not refill the rooms. Dr. Cramb also expressed concern that students were making the major decision to live in a fraternity house within one or two days of starting college. Dr. Cramb said the proposed new policy was discussed with the leaders of sororities and fraternities, including plaintiff, and changes were made based on their concerns. On cross-examination, Dr. Cramb admitted the new policy had major financial implications for

sororities and fraternities. The trial court then questioned Dr. Cramb directly, eliciting testimony that a student who moves to a fraternity house after signing a contract to live in a dormitory would have to pay "a few thousand dollars" to fulfill its housing contract while at the same time paying to live in the fraternity house.

Erin Gray, defendant's director of student life, testified that other institutions, including Northwestern, Northern Illinois, Eastern Illinois and Southern Illinois Universities, have policies similar to defendant's Greek Move Policy. On cross-examination, Gray admitted she did not know if the universities had contracts similar to plaintiff's 1964 contract with defendant.

The trial court granted the preliminary injunction, concluding in a written order: (1) plaintiff showed through the evidence, testimony and the 1964 agreement that it had a contractual right in need of protection; (2) plaintiff showed the likelihood of success on the merits; (3) plaintiff showed that irreparable harm would occur without an injunction; (4) plaintiff has an inadequate remedy at law; and (5) the balance of the hardships favors plaintiff.

Defendant appeals under Illinois Supreme Court Rule 307(a)(1) (eff. Feb. 26, 2010) (a party can appeal an interlocutory order "granting, modifying, refusing, dissolving, or refusing to dissolve or modify an injunction"). In an interlocutory appeal under this rule, controverted facts or the merits of the case are not decided. *Bishop v. We Care Hair Development Corp.*, 316 Ill. App. 3d 1182, 1189, 738 N.E.2d 610 (2000). The only question is whether there was a sufficient showing to affirm the order of the trial court. *Bishop*, 316 Ill. App. 3d at 1189. We review an interlocutory appeal under the abuse of discretion standard. *Bishop*, 316 Ill. App. 3d at 1189.

In general, Illinois courts do not intervene in a private institution's right "to enforce

5

reasonable regulations for the proper conduct of the school." *Aronson v. North Park College*, 94 Ill. App. 3d 211, 217, 418 N.E.2d 776 (1981). A preliminary injunction is an extreme remedy to be used only "where an emergency exists and serious harm would result if the injunction is not issued." *Callis, Papa, Jackstadt & Halloran, P.C. v. Norfolk & Western Ry. Co.*, 195 Ill. 2d 356, 365, 748 N.E.2d 153 (2001). "A party seeking a preliminary injunction must establish that (i) a clearly ascertained right in need of protection exists, (ii) irreparable harm will occur without the injunction, (iii) there is not an adequate remedy at law for the injury, and (iv) there is a likelihood of success on the merits." *Callis*, 195 Ill. 2d at 365-66. These four factors must be established before an injunction can be granted. *Hartlein v. Illinois Power Co.*, 151 Ill. 2d 142, 156, 601 N.E.2d 720 (1992). "It is not the purpose of a preliminary injunction to determine any controverted rights or to decide the merits of the case." *Lake in the Hills Aviation Group, Inc. v. Village of Lake in the Hills*, 298 Ill. App. 3d 175, 182, 698 N.E.2d 163 (1998).

Here, plaintiff did not meet the requirements of an injunction because there is an adequate remedy at law if an injury occurs. "Illinois courts have consistently held that money damages are the appropriate remedy for breach of contract." *Lake in the Hills Aviation Group, Inc.*, 298 Ill. App. 3d at 185. "If there is a legal or equitable remedy that will make plaintiff whole after trial, a preliminary injunction should not issue." *Northrop Corp. v. AIL Systems, Inc.*, 218 Ill. App. 3d 951, 954, 578 N.E.2d 1208 (1991). Injunctive relief is disfavored where the gravamen of a complaint is breach of contract and the trial court could award damages if it found a breach occurred. See *Northrop Corp.*, 218 Ill. App. 3d at 954-55.

Here, the gravamen of the complaint is breach of contract and plaintiff may seek damages

if it suffers losses as a result of defendant's Greek housing policy. Plaintiff's argument for injunctive relief was speculation that the policy would cause monetary losses and loss of the opportunity to provide its beneficial services to members who remained in a residence hall to avoid paying the penalty imposed by the new policy. The record shows the fraternity's expected losses from the new policy remain controverted. This is a question of damages properly addressed in a breach of contract action, not in an action for injunctive relief. Plaintiff has an adequate remedy at law and the injunction should not have been issued.

The circumstances here also support the conclusion that this matter was not ripe for judicial consideration. As noted, no students, fraternities or sororities had suffered losses because of the new policy. The rush and bidding processes through which fraternities and students make their selections would not occur until September 5, 2009, more than a week after the injunction was entered. Most of the testimony in support of the fraternity position amounts to little more than anecdotal praise of the benefits that are considered to be part of fraternity life. There is no serious reference in the trial court's oral remarks or written ruling to the legal issues raised and argued by the Institute.

The ripeness doctrine allows courts to avoid premature adjudication and involvement in abstract issues related to administrative policies. *Morr-Fitz, Inc. v. Blagojevich*, 231 Ill. 2d 474, 490, 901 N.E.2d 373 (2008). This doctrine protects parties from judicial interference until the effects of a decision are felt by the challenging parties. *Morr-Fitz, Inc.*, 231 Ill. 2d at 490. A two-part inquiry determines ripeness: (1) whether the issues are fit for a judicial decision; and (2) whether the parties would suffer a hardship if judicial consideration were withheld. *Morr-Fitz,*

1-09-2498

*Inc.*, 231 Ill. 2d at 490.

Here, the defendant's administrative decisions for the conduct of its institution were not appropriate for judicial intervention. And it is speculative whether the parties would suffer a hardship without judicial involvement. There was no persuasive evidence as to how many students would be affected by the new policy and how many would forego fraternity housing because of the expense. Until the effects of the new policy are felt, the questions raised here are not ripe for adjudication. The trial court erred in granting plaintiff's motion for an injunction.

In summary, we believe the trial court erred in granting plaintiff injunctive relief because: (1) plaintiff had an adequate remedy at law; and (2) the subject of this appeal was not ripe for judicial intervention.

The judgment of the circuit court is reversed.

Reversed.